```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                         DISTRICT OF ARIZONA

 3
     UNITED STATES OF AMERICA,      )
 4                                  )   CR 09-2343-TUC-FRZ
              Plaintiff,            )
 5   vs.                            )
                                    )   August 5, 2010
 6   YURIS BONILLA-GUIZAR and       )   Tucson, Arizona
     CARLOS ARMANDO CALIXTRO-       )
 7   BUSTAMANTE,                    )
                                    )
 8            Defendants.           )

 9

10                          MOTION HEARING

11
              BEFORE:  HONORABLE FRANK R. ZAPATA
12                  UNITED STATES DISTRICT JUDGE
                  405 W. CONGRESS, COURTROOM 5-A
13                     TUCSON, ARIZONA 85701

14

15                        A P P E A R A N C E S

16      FOR THE GOVERNMENT:  MS. KRISTEN KELLY and MR. JOHN
     EVANS, ASSISTANT UNITED STATES ATTORNEYS.
17
        FOR DEFENDANT BONILLA-GUIZAR:  MR. PETER HORMEL,
18   ATTORNEY AT LAW.

19      FOR DEFENDANT CALIXTRO-BUSTAMANTE:  MR. JESUS ROMO
     VEJAR, ATTORNEY AT LAW.
20
        THE INTERPRETER:  MR. JUAN CARLOS CORDOVA.
21

22                        Dianne Davenport
                       405 W. Congress, Suite 1500
23                        Tucson, Arizona 85701
                             (520)205-4266
24

25      Proceedings prepared by computerized realtime translation
```

1                    P R O C E E D I N G S

2              (Call to order of court, 9:30 a.m.)

3              THE CLERK:  Criminal case 09-2343, United States of

4    America versus Yuris Bonilla-Guizar and Carlos Armando Calixtro-

5    Bustamante, on for motion hearing.

6              MS. KELLY:  Good morning, Your Honor.  Kristen Kelly

7    and John Evans on behalf of the United States.

8              THE COURT:  Good morning.

9              MR. HORMEL:  Good morning.  Peter Hormel on behalf of

10   Mr. Yuris Bonilla-Guizar, who is here, and he's being assisted by the

11   court's interpreter.

12             MR. ROMO VEJAR:  Good morning, Your Honor.  Jesus

13   Romo Vejar on behalf of Mr. Calixtro, who is present, in custody.

14             THE COURT:  Good morning.

15             This is the time set for hearing on the government's

16   motion for defendant to provide handwriting and voice exemplars and

17   fingerprints to the government.

18             Ms. Kelly, do you wish to be heard?

19             MS. KELLY: Yes, Your Honor.  Thank you.  May I be

20   heard from here or do you want me up there?

21             Thank you, Your Honor.

22             Your Honor, this is the government's motion.  And what

23   we have asked for are three separate things.  One from Calixtro asking

24   for fingerprints, handwriting and a voice exemplar.  From Bonilla we

25   are asking for a voice exemplar and handwriting exemplar.

1               The reason why the fingerprints are being asked of
2    Calixtro, he was arrested separately.  He was arrested after the fact in
3    October, not at the time that they went in and searched the house on
4    September 24th.
5               So because of that, for chain of custody purposes, we are
6    asking for fingerprints to be taken again so that they are done by the
7    case agent because they weren't done by anybody that was
8    identifiable at the time.
9               With that said what we are also asking for from both
10   Calixtro as well as Bonilla, we are asking for the handwriting and the
11   voice exemplar.
12              The reason being in this case the evidence will show that
13   there was a ledger found at the stash house, and in that ledger there
14   were things written, names, one name that coincides with one of the
15   victims, Julio Cesar, as well as phone numbers and dollar amounts.
16              So we are asking for -- and I think under case law, it's
17   clear that, you know, a handwriting exemplar is something that is
18   nontestimonial.  It's not self-incrim -- it doesn't incriminate anybody's
19   Fifth Amendment rights and straightforward under California v. Gilbert.
20              As to the voice exemplar, in this case the evidence will
21   show that the day -- well, September 23rd, early morning hours, there
22   was a monitored phone call done between Karen Hayes, who is
23   Mr. Lopez's girlfriend, now wife.  That monitored phone call took place.
24   And in that call she talked to Mr. Lopez, her boyfriend, at the stash
25   house.  She also spoke to one of the hostage takers.

1               In that there was some broken English that was said.
2    Words, for example, "Name, tomorrow."  Words that also went so far
3    to say, "What, get money, call me."  Also, "We will send your
4    husband."  The English was broken but there was some English.
5               And so we are asking for voice exemplars to be done of
6    both defendants in order for the jury to be able to listen to those, for
7    the witnesses, Mr. Lopez as well as Ms. Karen Hayes, to listen to those
8    voice exemplars as well for identification purposes.
9               Now, Mr. Lopez did in fact identify Mr. Calixtro as one of
10   the people that spoke and spoke English during the monitored phone
11   call.  We have one phone call that was recorded.
12              There were other calls that were made before the
13   recorded phone call that weren't recorded, the initial phone calls to
14   Karen Hayes.  And in those calls Ms. Hayes talks about the fact that
15   there was more than one hostage taker that spoke to her.
16              So for the sake of that, for the sake of that identification,
17   we ask that both defendants undergo the voice exemplar and that they
18   be asked certain questions to repeat and give the physical
19   characteristics of their voice.
20              I know defense counsel -- would you like me to speak on
21   their points as well?
22              THE COURT:  Yes.
23              MS. KELLY:  Defense counsel has gone ahead and in
24   their objection -- before I go there I wanted to let you know
25   government filed its motion on July 29th.  At that point Jesus Romo

1  had indicated to the government that he had no objection to either of
2  the three requests, the fingerprinting, the handwriting or the voice.
3            At this point it's the government's understanding that he
4  does object.  I wanted to let the court know when it filed its motion he
5  didn't object.  That is why I had put that in the motion.
6            So with that said, in defense counsel's motion, they talk
7  about a particular case that they are asking the court to distinguish
8  and reject or restrain the voice exemplar.
9            The case that they talk about specifically is In re Elmer
10 Francis Layden.  In that case what it talks about is cursive writing.
11 And the court says that we are going to draw the line where something
12 is abnormal or unnatural.  And in that we are not going to have the
13 defendant submit to that.
14           It's the government's perspective and opinion that at
15 this point, you know, one, there's no understanding that these basic
16 broken English words are going to be abnormal or unnatural for either
17 defendant.
18           It's known that Calixtro does speak English.  He spoke
19 English when he sat down and talked to the detectives when he was
20 arrested.  As for Mr. Bonilla, the words are very basic.
21           The only way in which we will know if they are abnormal
22 or unnatural is after going through the process of a voice exemplar
23 and hearing whether or not he says, "No, I can't say those words," or
24 how he says those words, and at that point I think a determination
25 could potentially be made.

1        But at this point it's the government's perspective that
2   these are basic words and in that they would not be abnormal or
3   unnatural.  Certainly not for Mr. Calixtro who speaks English and for
4   Mr. Bonilla where the words are pretty basic and he has lived in the
5   country for quite awhile.
6        I just also wanted to make note, Your Honor, that in
7   addition their resistance or refusal to speak certain words during the
8   voice exemplar would also be admissible.
9        So with that, Your Honor, unless the court has any
10  questions?
11            THE COURT:  No.  Thank you.
12            MS. KELLY:  Thank you.
13            THE COURT:  Mr. Hormel.
14            MR. HORMEL:  Good morning, Your Honor.
15       I guess as far as the voice exemplars go, I couldn't
16  disagree more.
17       The analogy and the reason I cited In re Layden was the
18  government in that case was forcing a defendant to modify his natural
19  writing to fit the evidence that they had in question.  What the
20  government is doing in this case is exactly the same.
21       It couldn't be more prejudicial when we think about it a
22  little bit more.  When it comes to Mr. Bonilla, they are talking about a
23  couple of words that may be on a recording and they are going to then
24  try to match to words that they are going to ask my client to repeat in
25  the manner that most fits the fragmented recordings they have.

1               Now, I would be willing to guess, especially when we are
2    talking about an accented person, a person who does not speak
3    English, that a more prejudicial exercise could not really be imagined
4    or invented if we tried.
5               I think you could take just about anybody from northern
6    Mexico who speaks accented and broken English, force them to say
7    words that are similar or the same on the recording, and to the
8    average juror, they are going to sound pretty similar.
9               I think that would -- such an exercise is certainly
10   violative of the Fifth and Fourth Amendments.  It forces my client to
11   make statements and to conform his voice into something that the
12   government already has.
13              I strongly object to their being allowed to do that in this
14   case.
15              My client did not speak English.  There's no indication
16   that he ever -- I mean, the government says for some reason that he
17   has been living in the United States for a long time.  They have no
18   evidence that he speaks any English at all.  And so this exercise is an
19   exercise in deep prejudice.
20              That's why I brought out a little bit about the procedural
21   history in this case.  This case has been twisting and turning for
22   almost a year at that point.  By the time we go to trial, it will be
23   almost exactly a year.
24              If at this point we are going to start getting into voice
25   analysis and expert witnesses and comparison of handwriting, we are

1   talking about previously undisclosed witnesses.  We are talking about
2   reports that have yet to be made.  We are talking about arranging
3   these exemplars.  All of this is going to bump us right up to the trial
4   date.
5            I don't see how at this point the defense is going to be
6   able to prepare in time with these new pieces of evidence that the
7   government is proposing.  They have had literally all year to do this.
8   This information isn't new.  This is information they have had since the
9   beginning of the case.
10           The recorded phone call was done on September 23rd or
11  the 24th, I can't remember, of 2009.  Whatever handwriting they have
12  in the ledgers -- or alleged ledgers were found on the date of the
13  investigation also on September the 23rd of 2009.
14           Now, in August of 2010, we are suddenly talking about
15  the dire need to compare fragments of an individual's spoken word on
16  a tape to my client's voice.
17           I think, Your Honor, that particular exercise is extremely
18  prejudicial.  I would also ask that be denied outright as regard to my
19  client.  There is just no way to do it fairly.  I think In re Layden
20  describes why that is.
21           The last thing, as far as the handwriting samples, I
22  would also -- you know, the case law does in general permit
23  handwriting samples to be taken.
24           However, in this case you are going to have also
25  fragmentary lists and things like that that are contained in a ledger

1    that contained a certain handwriting style.

2                I will object in advance by any attempt from the
3    government to ask my client to conform his writing to said sample.  If
4    he has a different writing style, that writing style should be what he is
5    allowed to give as a sample and he shouldn't be made to force his own
6    handwriting to conform to that.

7                They haven't asked for fingerprints from my client so I
8    won't address that.

9                I would ask the court to keep in mind also the time
10   constraints we are operating under now.  At this point we -- it is
11   August 5th.  The trial is schedule for September 14.  Let's assume that
12   samples are taken.  They will happen over the next few days.  Then I
13   assume there will be experts that look at them.  Then I will assume
14   there is further disclosure by the government.  Reports will be issued.
15   And then we'll have to scramble to try to deal with it.  It puts us in an
16   extremely difficult situation.

17               We have been attempting to prosecute the case as is for
18   a long time.  Now at the last minute we are being forced to react to
19   something new.

20               Thank you, Your Honor.
21               THE COURT:  Thank you.
22               Mr. Romo, anything you wish to add?
23               MR. ROMO VEJAR:  Yes, Your Honor.
24               Your Honor, I agree with Mr. Hormel.  We are at the eve
25   of trial.  The kind of evidence that the government seeks to obtain at

Case 4:09-cr-02343-FRZ-GEE   Document 231   Filed 11/18/11   Page 10 of 14

10

1   this point, comparison of voice and writing examples, is not very -- is
2   not at its best state of the art, Your Honor.
3           There is all sorts of discrepancies that might be had with
4   one sample to another.  Experts may disagree.  At this point, as
5   Mr. Hormel has stated, there would be the time to take the samples,
6   there will be time for the preparation, and then, to be fair, we would
7   have to find our own experts to make a comparison.
8           We would have to find other persons that might have
9   spoken whose voices may be similar, who might have written in the
10  ledgers, so that they can compare.  And that will take us past certainly
11  the trial date of the 14th of September, Your Honor.
12          It is true, Judge, that I had initially agreed to this
13  exercise, but on second thought I thought the best of it.  And I agree
14  with co-counsel that this would certainly be very prejudicial and that
15  because it is not timely that you should deny it.
16          The same thing with the fingerprints.  We don't have
17  time at this point.
18          That's all, Judge.
19          THE COURT:  Ms. Kelly, why is it that we are a month
20  from trial and now taking handwriting exemplars, voice exemplars and
21  fingerprints?
22          MS. KELLY:  Yes, Your Honor.
23          First off, the fingerprint comparison is one that can be
24  done very quickly and the results will be given to defense counsel very
25  quickly.

1                So I appreciate the court's frustration that we are five
2  weeks out from trial, but we will certainly have those results to
3  defense counsel very quickly.
4                As for the handwriting analysis, we already have the
5  individual lined up that is going to be conducting that.  That is Al
6  Anderson.  He is with the U.S. Postal Service.  The results will come
7  out quite quickly as well.
8                As for the voice exemplar, Your Honor, that's not
9  something that gets analyzed by an expert.  We are not intending on
10 bringing an expert in on comparison of voice exemplar.  That is
11 something that is left to the jury.  It is something left for an
12 identification of the witnesses.
13               So with that we hope that helps the court in
14 understanding that we don't intend to be disclosing anything on the
15 eve of trial, that these should be done within the next couple of weeks
16 and given to defense counsel.
17               And I do appreciate Your Honor's frustration that we
18 are --
19               THE COURT:  It won't be the next couple of weeks.  You
20 will have to have your experts.  The marshal will hold the folks here
21 today until their last run of the day.  If you have them locally, you
22 better have them down here today to take the fingerprints and the
23 handwriting exemplars and the voice, if you can get that done today.
24               I'm going to order that any reports recording this be
25 disclosed by next Friday.  If you don't then you are not going to be

1  able to use it.
2           As to the voice exemplars, I'm going to hear those
3  before trial to see whether or not they are too prejudicial to present to
4  the jury.
5           I'm going to allow those be taken because the case law
6  allows for it and does not even require that the government make any
7  preliminary showing of reasonableness in order to obtain these.
8           The court views these handwriting exemplars, voice
9  exemplars and the fingerprints obviously as matters that are not
10 testimonial and do not in any way violate the defendants' Fifth
11 Amendment rights against self-incrimination.
12          The government's motion for the defendants to
13 subject -- defendant Bonilla-Guizar to subject to handwriting and voice
14 exemplars will be granted.  And that will be ordered by the court.
15          The government's motion for fingerprints, handwriting
16 and voice exemplars from defendant Calixtro-Bustamante, the court
17 will grant that motion and order those to be taken.
18          The government is to present counsel with the reports
19 from those by next Friday on each of these matters.  If you can't get it
20 done by then, then they won't be used in trial in this case.
21          The issue regarding the voice exemplars that the
22 government proposes to present to the jury, once the defendants
23 review those, they can file their motion in limine.  And we will review
24 whether or not the process in taking those is a process that is so
25 prejudicial that it outweighs any probative value it may have and we'll

1   discuss that issue before trial.
2           That is the ruling of the court.
3           Anything further at this time, Ms. Kelly?
4           MS. KELLY:  No, Your Honor.  Thank you.
5           THE COURT:  Mr. Hormel?
6           MR. HORMEL:  No, Your Honor.
7           THE COURT:  Mr. Romo?
8           MR. ROMO VEJAR:  No, Your Honor.  Thank you.
9           THE COURT:  Thank you.  We will stand at recess.
10          (The proceedings concluded at 9:55 a.m.)

CERTIFICATE

I, Dianne Davenport, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/  Dianne Davenport                              November 16, 2011