1          IN THE UNITED STATES DISTRICT COURT

2                  DISTRICT OF ARIZONA

3

4    UNITED STATES OF AMERICA,      )
                                    )   CR 09-2343-TUC-FRZ
              Plaintiff,            )
5    vs.                            )
                                    )   October 26, 2010
6    YURIS BONILLA-GUIZAR and       )   Tucson, Arizona
     CARLOS ARMANDO CALIXTRO-       )
7    BUSTAMANTE,                    )
                                    )
8              Defendants.          )

9

10                JURY TRIAL - DAY 1

11

12          BEFORE:  HONORABLE FRANK R. ZAPATA
                 UNITED STATES DISTRICT JUDGE
              405 W. CONGRESS, COURTROOM 5-A
13                TUCSON, ARIZONA 85701

14

15              A P P E A R A N C E S

16       FOR THE GOVERNMENT:  MS. KRISTEN KELLY and MR. JOHN
     EVANS, ASSISTANT UNITED STATES ATTORNEYS.
17
         FOR DEFENDANT BONILLA-GUIZAR:  MR. PETER HORMEL,
18   ATTORNEY AT LAW.

19       FOR DEFENDANT CALIXTRO-BUSTAMANTE:  MR. JESUS ROMO
     VEJAR, ATTORNEY AT LAW.
20
         THE INTERPRETERS:  MR. RON ZELLON and MR. DEREK SULLY.
21

22                Dianne Davenport
              405 W. Congress, Suite 1500
23                Tucson, Arizona 85701
                   (520)205-4266
24

25       Proceedings prepared by computerized realtime translation

1                          PROCEEDINGS INDEX

2     PROCEEDING                                          PAGE

3     PRETRIAL MATTERS                                       3

4     JURY SELECTION                                         8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2          (Call to order of court, 10:35 a.m.)

3          THE CLERK:  Criminal case 09-2343, United States of

4    America versus Yuris Bonilla-Guizar and Carlos Armando

5    Calixtro-Bustamante, on for jury trial.

6          Counsel, please state your appearance.

7          MS. KELLY:  Good morning, Your Honor.  Kristen Kelly

8    and John Evans on behalf of the United States.

9          THE COURT:  Good morning.

10         MR. HORMEL:  Good morning.  Peter Hormel appearing

11   on behalf of Yuris Bonilla-Guizar.  He appears in custody.  And my

12   investigator, Alex Vazquez.

13         MR. ROMO VEJAR:  Jesus Romo on behalf of Mr.

14   Calixtro-Bustamante, who is in custody.

15         THE COURT:  This is the time for trial in this matter.  Is

16   there some issue before we bring in the jury?

17         MR. HORMEL:  Yes, Your Honor.

18         I wanted to bring up an issue that we began to discuss

19   yesterday and I think we need to deal with before the case starts

20   regarding the material witness, Mr. Lopez-Trujillo, who apparently the

21   government is planning to have testify without immunity.

22         Now, I don't represent Mr. Lopez-Trujillo obviously, but

23   it is highly irregular that a witness be brought in who is going to

24   subject himself to criminal prosecution through his testimony.

25         Apparently there was an affidavit submitted yesterday, I

4

1   don't know if the court has seen that, from material witness counsel.

2   THE COURT:  I have not seen it.

3   MR. HORMEL:  I can give the court a copy.

4   THE COURT:  Tell me what it says.

5   MR. HORMEL:  It says the following:

6   1.  He is an attorney with the Office of the Federal Public

7   Defender.  I'm going to say "I" because that is what it says.

8   "2.  I'm legal counsel for Mr. Lopez-Trujillo.

9   "3.  I do not have in my possession a letter from the

10  government regarding immunity from prosecution for

11  Mr. Lopez-Trujillo.

12  "4.  I never received such a letter.

13  "5.  I did not have a verbal conversation with Munish

14  Sharda, Kristen Kelly or John Evans about immunity from prosecution

15  for Mr. Lopez-Trujillo.

16  "6.  Conversations between Mr. Lopez-Trujillo and myself

17  are privileged."

18  So the long and short of it is, Your Honor, this fellow

19  needs to be advised that he is, A, subjecting himself to criminal

20  liability through his testimony and, B, he has a right to remain silent.

21  Apparently these things haven't been done.  At least we

22  know that the part about immunity hasn't been done.

23  It is, you know, I think regular practice in this court and

24  in this jurisdiction that material witnesses are, as a matter of due

25  course, sent a letter or the attorneys are sent a letter at the beginning

1    of the case advising them the government does not intend to pursue

2    charges against them for illegal entry.

3              I've represented material witnesses in the past, Your

4    Honor.  It's more or less the only thing you've got to do as a material

5    witness attorney is make sure your client is not prosecuted, either for

6    illegal entry or perjury.

7              As such this individual has apparently gone this whole

8    time giving statements to the government and all of these things

9    without having any advice or having been informed that he's

10   incriminating himself.

11             Your Honor, that needs to be done prior to the fact --

12   prior to him testifying.

13             THE COURT:  He's represented by counsel.  He's

14   represented by competent counsel, experienced counsel, who has been

15   here for years as an attorney with the office of the Federal Public

16   Defender.

17             If that's the position that they chose to take while he

18   testifies as a witness, then that's the position they chose to take.  I

19   mean, that's not an issue for the court at this point to take up.

20             The only issue is was he promised anything.  And that is

21   important for your purposes.  If he wasn't, then he wasn't.  That's the

22   end of that argument.

23             MR. HORMEL:  I would like to voir dire ahead of time

24   then and before counsel make any statements about that in opening

25   because it's standard practice.  I mean, I think we ought to have a

1  chance to voir dire him prior to him talking to the jury.

2        THE COURT:  No.  There's no point in that.  Your motion

3  is overruled.

4        MR. HORMEL:  The next thing is the fact, Your Honor --

5  the second issue is the fact that the disclosure is still coming in as of

6  this morning.  We were disclosed two items today.  One is an item of

7  five pages that include what appears to be a Western Union receipt

8  and four pages of handwritten notes apparently drafted by Karen

9  Hayes.

10       My understanding is that the government's position is

11 these are contemporaneously drafted to the events last year in

12 September by Ms. Hayes relative to the events that happened.

13       I'm not sure why it took the government 13 months to

14 disclose this stuff if they intend to use it.  It's hard to react to things

15 on the morning of trial.  I think it's extremely late disclosure.

16       The second thing is there was another interview

17 disclosed.  Apparently they did another interview with Mr. Lopez-

18 Trujillo middle towards the end of last week.  The report of

19 investigation regarding that interview was disclosed this morning as

20 part of the packet of exhibits.  Again, late disclosure.

21       And at this point, Your Honor, I would ask that the

22 mention of these items be precluded as violative of the disclosure

23 agreement.

24       MS. KELLY:  Your Honor, Ms. Hayes hand delivered the

25 packet, that was the Western Union packet, today to the government.

1    We gave this to the defense as soon as we had it.  Apparently they are

2    notes that she was keeping.  And as soon as we had it, we gave it to

3    defense.  It wasn't something that we have had for any period of time.

4    We gave them to them the minute we received them which was today.

5                    As for ROI 23, the report of investigation number 23,

6    which defense was talking about, we actually covered that yesterday

7    in our hearing.  That was the ROI related to the pretrial interview of

8    Mr. Lopez and that has been disclosed to the defense.

9                    THE COURT:  Thank you.  The defense motion to

10   preclude is denied.

11                   Please get -- in this case we are going to seat 32

12   prospective jurors.  From that the government will have six strikes

13   plus one for the alternate.  We are going to seat one alternate.  Each

14   defendant will have six strikes but one of those strikes is for the

15   alternate.

16                   So the defendants will have a total of 12 strikes.  Two of

17   them will go to alternates.  Ten will go to the rest of the people.  And

18   from those strikes, I believe if we take the government's seven, six

19   and one, six plus one for the alternate, and the defenses' 12, we have

20   19.  We need to seat 13 jurors.  So I believe that would call for us to

21   call forward 32 jurors.

22                   Is that correct, Ms. Clerk?

23                   THE CLERK:  Yes, sir.

24                   THE COURT:  Please bring in the jury.

25                   (The prospective panel was seated.)

1       THE CLERK:  Criminal case 09-2343, United States of

2  America versus Yuris Bonilla-Guizar and Carlos Armando Calixtro-

3  Bustamante, on for jury trial.

4       Counsel, please state your appearance.

5       MS. KELLY:  Good morning.  Kristen Kelly and John

6  Evans on behalf of the United States.

7       THE COURT:  Ms. Kelly, is the government ready to

8  proceed?

9       MS. KELLY:  Yes, Your Honor.  Thank you.

10      MR. HORMEL:  Good morning.  Peter Hormel on behalf of

11  Mr. Bonilla-Guizar.  Yes, we are ready to proceed as well.

12      MR. ROMO VEJAR:  Good morning.  Jesus Romo on

13  behalf of Carlos Calixtro, who is present.

14      THE COURT:  Are you ready to proceed?

15      MR. ROMO VEJAR:  Yes, we are.

16      THE COURT:  Thank you.

17      Good morning, ladies and gentlemen of the prospective

18  jurors in this courtroom at this time.

19      This is the time set for trial in this matter.  This is a

20  criminal case that we will be trying today.  We are going to start the

21  jury selection process by calling up by numbers.

22      The first group that we'll call up is Jurors Number 1

23  through 8.  Look at your juror number.  1 through 8.

24      1 through 8, stand there where you are for a moment,

25  because I forgot to have you sworn.

1          All of you that are here for jury service, if you would

2   please stand up and raise your right hand.  All of you including those

3   in front.

4          (The prospective panel was sworn.)

5          THE COURT:  You may be seated.

6          This first group, 1 through 8, Juror Number 1, come all

7   the way across and take that top row and take the first seat.

8   Everybody else follow her.

9          Now we'll take Jurors 9 through 16.  Check your

10  numbers.  Come forward.  Same situation.  Number 9 should be at the

11  far right.

12         Juror Number 9, if you would come through this row all

13  the way to the first seat and the rest of you follow.

14         Thank you.

15         Next we'll take Jurors 17 through 24, starting with

16  Number 17.  You may be seated on that bench.  You may have to

17  squeeze up a little bit.

18         Watch your head, Number 17, with that TV monitor.

19         Next we'll take Jurors Number 25 through 32.  If you

20  would be seated on that bench there.  Hopefully there is space enough

21  for all of you.

22         Those of you still standing, you best find a seat because

23  we will be here through most of today.

24         Ladies and gentlemen, you will now be asked a number

25  of questions about yourselves.  These questions are not designed to

1   pry unnecessarily into your personal lives or affairs.  Each question is

2   designed to assist the attorneys in selecting the fairest jury possible.

3           Now, please do not withhold information in order to be

4   seated on this jury.  Nor should you answer in a way that you think is

5   going to get you excused from this jury.  What I want you to do is

6   answer honestly and straightforward.  That's all we ask of you.

7           Now, if your answer to a question is yes, please raise

8   your hand and give me an opportunity to call upon you.  If your

9   answer to a question is no, you need do nothing.

10          If at any time you would prefer to approach the bench,

11  which means to come here to the side of my desk here, and answer

12  your questions there instead of answering in front of the entire panel,

13  I and the lawyers in this case will meet you there for you to answer

14  your questions.

15          Now, those jurors who are still seated in the back and

16  whose names and numbers have not yet been called, also listen

17  closely to the questions that are being asked because undoubtedly

18  many of you are going to be called upon to be substituted for panel

19  members who have already come forward.

20          At this time you do not need to raise your hand to a

21  question if your answer would be yes.  I'm talking about those of you

22  in the back.  You need to remember the question.  Because when I call

23  you forward to replace one of these jurors, the first question I'm going

24  to ask you:  Would you have answered yes to any question I have

25  asked so far?

1    So you don't need to raise your hand, you don't need to

2    answer, but you need to remember those questions that you would

3    have answered yes to or those questions that would have applied to

4    you.

5    My name is Frank Zapata.  I'm a United States District

6    Court Judge.  I sit here in Tucson.

7    In this trial I will be assisted by the court reporter, Ms.

8    Dianne Davenport, seated to my left.  She will be taking down

9    everything that is said in this courtroom throughout this trial.

10    To my right is the courtroom deputy clerk, Ms. Michelle

11    Mejia, who has already given me instructions.  She is here to keep

12    track of all the paperwork that comes in during the trial.  Once the

13    trial -- once the jury is selected, she also becomes the bailiff.  She is

14    the one that assists the jurors who are serving as jurors in this case.

15    Now, are any of you having trouble hearing me?  We do

16    have hearing assistance devices we can give you.  If you at any time

17    can't hear me, please let me know.  It's important that you hear all

18    the questions.

19    We will be assisted this morning by Ms. Allison

20    Siquieros.  She is also a Deputy U.S. District Court Clerk.  She will be

21    helping us, carrying the microphone around, while you answer the

22    questions that we are going to have.

23    Now, in this case the United States is represented by Ms.

24    Kristen Kelly, who is an Assistant United States Attorney.

25    Ms. Kelly is now standing.

1            Now, Ms. Kelly is an Assistant United States Attorney.

2    You've seen Mr. Evans, who is also an Assistant United States

3    Attorney.  They are the prosecutors in federal court.

4            Do any of you know Ms. Kelly either socially or

5    professionally?  She is standing.

6            We have one hand.

7            When you answer a question, tell us your juror number

8    first so that we can have that recorded by the court reporter.

9            PROSPECTIVE JUROR:  Number 16.

10           THE COURT:  You know Ms. Kelly?

11           PROSPECTIVE JUROR:  Professionally.

12           THE COURT:  How do you know her?

13           PROSPECTIVE JUROR:  I work in the U.S. Attorney's

14    office.

15           THE COURT:  She works in the same office you work?

16           PROSPECTIVE JUROR:  Yes.

17           THE COURT:  The U.S. Attorney -- both lawyers are from

18    the United States Attorney.  Do you feel that you could be a fair and

19    impartial juror in this case, be fair to both sides, both the prosecution

20    and defense, given the fact that you work in the same office with Ms.

21    Kelly and Mr. Evans?

22           PROSPECTIVE JUROR:  No.

23           THE COURT:  Thank you.

24           Any objection, counsel, if we excuse Number 16?

25           MS. KELLY:  No objection.

1        MR. HORMEL:  No, Your Honor.

2        MR. ROMO VEJAR:  No.

3        THE COURT:  Juror 16, thank you very much for your

4   service.  You are excused at this time.

5        We will call Juror Number 33 at this time.

6        Juror Number 33, come forward, please.

7        Juror Number 33, would you have answered yes to any

8   of the questions I've asked so far?

9        PROSPECTIVE JUROR:  No.

10        THE COURT:  Thank you.

11        Also representing the government, the United States in

12   this case, is Mr. John Evans.  Mr. Evans is also an Assistant United

13   States Attorney, a prosecutor here in federal court.

14        Do any of you know Mr. Evans either socially or

15   professionally?

16        Ms. Kelly, if you would please introduce your case agent.

17        MS. KELLY:  Thank you, Your Honor.

18        Ladies and gentlemen, this is Special Agent David Slagle

19   with Immigration and Customs Enforcement.

20        THE COURT:  Mr. Slagle, where is your duty station, sir?

21        AGENT SLAGLE:  Tucson, Arizona.

22        THE COURT:  Are you with Immigration and Customs

23   Enforcement?

24        AGENT SLAGLE:  Yes, Your Honor.

25        THE COURT:  Do any of you know Agent Slagle either

1    socially or professionally?

2              Thank you.

3              In this matter the defendant Yuris Bonilla-Guizar is

4    represented by Mr. Peter Hormel.  Mr. Hormel is an attorney in private

5    practice here in Tucson.

6              Do any of you know Mr. Hormel?

7              Mr. Hormel, if you would introduce Mr. Bonilla, please.

8              MR. HORMEL:  This is Yuris Bonilla-Guizar.

9              THE COURT:  Do any of you know Mr. Yuris

10   Bonilla-Guizar?

11             You may be seated.

12             If you would introduce your investigator, please.

13             MR. HORMEL:  This is Alex Vazquez.

14             THE COURT:  Do any of you know Mr. Alex Vazquez

15   either socially or professionally?

16             Defendant Carlos Armando Calixtro-Bustamante is being

17   represented by Mr. Jesus Romo Vejar.  Mr. Romo Vejar is an attorney

18   in private practice here in Tucson.

19             Do any of you know Mr. Romo Vejar?

20             Mr. Romo, would you please introduce your client.

21             MR. ROMO VEJAR:  Indeed.  Mr. Carlos Calixtro-

22   Bustamante.

23             THE COURT:  Do any of you know Mr. Carlos Calixtro-

24   Bustamante socially or professionally?

25             Thank you.  You may be seated.

1    Do any of you know anybody who works in the United

2    States Attorney's office?

3    We just saw one employee leave.  They have lawyers, as

4    you see here today with Ms. Kelly and Mr. Evans.  They have

5    investigators.  They have paralegals.  They have secretaries.

6    Do any of you know anybody who works in the United

7    States Attorney's office?

8    As I stated earlier, the case before us is a criminal case.

9    Criminal charges have been brought.  And I'm going to read to you the

10   indictment in this case.  It reads as follows:

11   "Count 1.  From a date unknown to on or about

12   September 24, 2009, at or near Tucson, in the District of Arizona,

13   Yuris Bonilla-Guizar and Carlos Armando Calixtro-Bustamante did

14   knowingly and intentionally combine, conspire, confederate and agree

15   together and with various other persons known and unknown to

16   intentionally seize, detain and threaten to kill, injure and continue to

17   detain aliens who were illegally in the United States, in order to

18   compel the families of the illegal aliens to pay an increased smuggling

19   fee as an explicit and implicit condition for the release of the illegal

20   aliens, in violation of Title 18, United States Code, Section 1203(a)."

21   Count 2 states that:

22   "From a date unknown to on or about September 24,

23   2009, at or near Tucson, in the District of Arizona, Yuris Bonilla-Guizar

24   and Carlos Armando Calixtro-Bustamante did intentionally seize,

25   detain and threaten to injure and continue to detain Julio Cesar

1  Lopez-Trujillo, an illegal alien, in order to compel the family of Julio

2  Cesar Lopez-Trujillo to pay $2,300 as an explicit and implicit condition

3  for the release of said alien in violation of Section 1203(a)."

4          Count 3 says:

5          "On or about September 24, 2009, at or near Tucson, in

6  the District of Arizona, Yuris Bonilla-Guizar and Carlos Armando

7  Calixtro-Bustamante, knowing and in reckless disregard of the fact

8  that an alien, Julio Cesar Lopez-Trujillo, had come to, entered and

9  remained in the United States in violation of law, did knowingly

10 conceal, harbor and shield from detection such alien in any place,

11 including any building or any means of transportation to avoid said

12 alien's detection by immigration authorities for the purpose of

13 commercial advantage or private financial gain, and during and in

14 relation to said harboring the defendant placed in jeopardy the life of

15 said alien, in violation of Title 8, United States Code, Section 1324(a),"

16 and other subsections.

17          To each count of that indictment, each defendant, Yuris

18 Bonilla-Guizar and Carlos Armando Calixtro-Bustamante, have entered

19 pleas of not guilty.

20          And having read the indictment, I want to explain to you

21 right at the offset that the indictment in a criminal case is merely an

22 accusation.  It's the way that the law provides to accuse a person of an

23 offense in order to bring him to trial.  It is not evidence against an

24 accused person.  And the fact that he has been indicted would create

25 no inference nor authorize any inference to be drawn against him

1   merely because he was accused of an offense.

2           Defendants are presumed to be innocent of the charges

3   contained in the indictment.  The defendants have pleaded not guilty

4   to the charges and are presumed innocent unless and until proved

5   guilty beyond a reasonable doubt.

6           The defendants have a right to remain silent and never

7   have to prove innocence or present any evidence.

8           A separate crime is charged against the defendants in

9   each count.  The charges have been joined for trial.  You must decide

10  the case of each defendant on each crime charged against that

11  defendant separately.  Your verdict on any count as to any defendant

12  should not control your verdict on any other count or any other

13  defendant.

14          Have any of you ever seen, heard or read anything

15  about this case?  Or have any of you ever heard anyone express an

16  opinion about this case?

17          Thank you.

18          You heard the charges that are brought by way of the

19  indictment in this case.  Would anything about this case and those

20  charges make it difficult for any of you to serve as a fair and impartial

21  juror in this case?

22          I'm going to ask you that question probably several

23  times in the course of this morning and perhaps this afternoon:  Could

24  you serve as a fair and impartial juror?

25          That means could you listen to the evidence presented

1  here in court and make your decision in this case, render your verdict,

2  solely based on the evidence that you hear here in this court, laying

3  aside any beliefs, opinions, sympathies, prejudices that you may have.

4  If you can do that, you can be a fair and impartial juror.

5          And when I ask you these questions, and you think to

6  yourself maybe there is something there, maybe there's not, ask

7  yourself this:  If I were the government or if I were the defense, would

8  I want a juror of my beliefs, of my experiences, of my opinions, of my

9  sympathies, of my prejudices sitting on this jury?

10          And that's what it means when I ask you could you be

11  fair and impartial.

12          Have you, any members of your family or close personal

13  friends ever been involved in a case like this?

14          Thank you.

15          From their names I think it's obvious that the

16  defendants in this case are of Hispanic ethnicity or descent.  Is there

17  anything about that fact that would in any way prevent you from being

18  fair and impartial in this case?

19          In this case the defendants are using the assistance of a

20  federally certified court interpreter.  Would the fact that the

21  defendants are using the services of a court interpreter in any way

22  keep you from being fair and impartial in this case?

23          Thank you.

24          I'm going to read to you a list of names here and see if

25  you think you know any of these people.  Let us know that.  These

1   people may or may not be called as witnesses.  This is sort of at the

2   very beginning of the case who we think may be called as witnesses.

3            You met one already, David Slagle.  The other names I

4   will read to you:

5            Michael Guerrero, Julio Cesar Lopez-Trujillo, Karen Hayes

6   Lopez, Eric Tyrell,  Rodney O'Hara, Sean Coldiron, Sean O'Connor,

7   Roberto Teran, Aaron Simms, Alan Anderson, Elaine Wooten, Jeff Ellis,

8   Yasmin Rascon, Alex Vazquez, Maria Pina, Maurice Goldman, Edlin

9   Yucari Hernandez-Tinoco, Beatriz Pina and Jose Rascon.

10            Do any of those names sound familiar to you?

11            Thank you.

12            Have any of you ever served as a member of a grand

13   jury either federal, state or county?

14            Today you are here as part of a trial jury or a petit jury.

15   A grand jury is a group of people that meet probably twice a month

16   over a period of six months to a year.

17            Have any of you ever served as a grand juror?

18            Thank you.

19            Have any of you ever been called as a witness in a civil

20   or a criminal case?

21            Today, as I said, we have a criminal case where

22   someone is charged by the government with an offense.

23            A civil case is when two parties are suing each other.  It

24   could be a contract case, a car accident.  It could be a divorce.  It

25   could be any type of case where two people are suing each other.

1          PROSPECTIVE JUROR:  Juror Number 5.  About 35 years

2     ago, I was a witness in an attempted murder.

3          THE COURT:  Do you recall who called you as a witness?

4     Was that the prosecution or the defense?

5          PROSPECTIVE JUROR:  Prosecution.

6          THE COURT:  Did anything happen in that case that

7     makes you feel you could not be a fair and impartial juror in this case?

8          PROSPECTIVE JUROR:  I don't believe so, no.

9          THE COURT:  Thank you.

10          PROSPECTIVE JUROR:  Number 6.  I was involved in a

11     contract dispute for a hospital that I worked at.

12          THE COURT:  Did anything happen in that case in your

13     role as a witness that would keep you from being fair to both sides in

14     this case?

15          PROSPECTIVE JUROR:  I don't believe so.

16          THE COURT:  Thank you.

17          Anybody else to that question?

18          PROSPECTIVE JUROR:  Juror 29.  I was a witness in a

19     medical malpractice case.

20          THE COURT:  Anything about that experience that would

21     keep you from being fair to both sides in this case?

22          PROSPECTIVE JUROR:  No, sir.

23          THE COURT:  Thank you.

24          PROSPECTIVE JUROR:  Juror 28.  I've been called as a

25     witness twice for lawsuits involving car accidents and multiple times

1    years ago for custody hearings of children, you know.

2                    THE COURT:  In the lawsuits were you called because of

3    any particular expertise that you have or was that --

4                    PROSPECTIVE JUROR:  I was a witness to both wrecks.

5                    THE COURT:  Anything about either that or the custody

6    issues where you were called as a witness that would keep you from

7    being fair to both sides in this case?

8                    PROSPECTIVE JUROR:  No.

9                    THE COURT:  Thank you.

10                   PROSPECTIVE JUROR:  Juror Number 32.  I was involved

11   as a witness for a divorce/child custody case several years ago.

12                   THE COURT:  Anything about that that would keep you

13   from being fair to both sides?  Anything happen that would keep you

14   from being fair to both sides?

15                   PROSPECTIVE JUROR:  No.

16                   THE COURT:  Thank you.

17                   PROSPECTIVE JUROR:  Number 19.  I was involved as a

18   witness in a mental health commitment case.

19                   THE COURT:  Anything about that that would keep you

20   from being fair to both sides in this case?

21                   PROSPECTIVE JUROR:  No, Your Honor.

22                   THE COURT:  Thank you.

23                   Have you or any member of your family ever been

24   employed by the government?

25                   If you have just take the microphone as it comes by and

1   tell us what it was.

2            PROSPECTIVE JUROR:  State of Nevada.  Juror Number

3   5.

4            THE COURT:  What did you do for the State of Nevada.

5            PROSPECTIVE JUROR:  State court administrator.

6            THE COURT:  Anything about that job that would keep

7   you from being fair to both sides in this case?

8            PROSPECTIVE JUROR:  No, sir.  I was on the business

9   side.

10            PROSPECTIVE JUROR:  Juror Number 6.  My father was

11   an administrator with the VA Hospital system.  I was also employed

12   there for many years.

13            THE COURT:  Anything about that that would keep you

14   from being fair to both sides?

15            PROSPECTIVE JUROR:  No, sir.

16            PROSPECTIVE JUROR:  Number 7.  Husband worked for

17   U.S.D.A.

18            THE COURT:  Was he involved in any law enforcement

19   duties with U.S.D.A?

20            PROSPECTIVE JUROR:  No.

21            THE COURT:  Anything about your employment -- or his

22   employment, I'm sorry, that would keep you from being fair to both

23   sides in this case?

24            PROSPECTIVE JUROR:  No.

25            THE COURT:  Thank you.

1        PROSPECTIVE JUROR:  Juror Number 8.  My husband

2   currently works for the Department of Corrections.

3        THE COURT:  Is he a correctional officer?

4        PROSPECTIVE JUROR:  Yes.

5        THE COURT:  Where is he stationed?

6        PROSPECTIVE JUROR:  The pen on Wilmot.

7        THE COURT:  Anything about his job that you feel would

8   keep you from being fair to both sides in this case?

9        PROSPECTIVE JUROR:  Yes.

10        THE COURT:  Counsel, any objection if we excuse

11   Number 8?

12        MS. KELLY:  No objection.

13        MR. HORMEL:  No, Your Honor.

14        MR. ROMO VEJAR:  No, Your Honor.

15        THE COURT:  Thank you for your service, Number 8.

16   You are excused.

17        We'll call Juror Number 34, please.

18        Juror Number 34, would you have answered yes to any

19   of the questions I've asked so far?

20        PROSPECTIVE JUROR:  No.

21        THE COURT:  Thank you.

22        That last question I think we have one more hand there.

23   Employment by the government.

24        PROSPECTIVE JUROR:  Juror Number 12.  I had a

25   brother-in-law that was a border patrolman.

1        THE COURT:  Did you discuss the work that your

2   brother-in-law did with the border patrol?

3        PROSPECTIVE JUROR:  At times.  This was years ago.

4        THE COURT:  Anything about that -- those discussions

5   that you had with him that made you feel you could not be fair to both

6   sides in this case?

7        PROSPECTIVE JUROR:  No.

8        THE COURT:  We will have some border patrol agents

9   that will testify in this case.  Given the fact that your brother-in-law

10  was a border patrol agent, would that in any way affect your ability to

11  be fair with both sides?

12       PROSPECTIVE JUROR:  No.

13       THE COURT:  Thank you.

14       PROSPECTIVE JUROR:  Juror Number 2.  My stepson is

15  employed by the border patrol currently.

16       THE COURT:  Do you discuss the work that he does with

17  your stepson?

18       PROSPECTIVE JUROR:  Yes.

19       THE COURT:  Is he stationed here in the Tucson area?

20       PROSPECTIVE JUROR:  Sonoita.

21       THE COURT:  As I said there will be a number of border

22  patrol agents that will testify in this case.  I count at least three or

23  possibly four.  The fact that border patrol agents will be witnesses in

24  this case and the fact your stepson is a border patrol agent, would that

25  affect your ability to be fair to both sides in this case?

1          PROSPECTIVE JUROR:  I believe it would affect it, yes.

2          THE COURT:  Counsel, any objection if we excuse Juror

3     Number 2?

4          MS. KELLY:  No objection.

5          MR. HORMEL:  No, Your Honor.

6          MR. ROMO VEJAR:  No, Your Honor.

7          THE COURT:  Thank you, Juror Number 2.  Thank you

8     for your service.  You are excused at this time.

9          We'll call Juror Number 35.

10         Juror Number 35, would you have answered yes to any

11    of the questions I've asked so far?

12         PROSPECTIVE JUROR:  Yes.  My little sister is the

13    assistant to a criminal judge in superior court.

14         THE COURT:  Anything about that, her employment, that

15    would keep you from being fair to both sides in this case?

16         PROSPECTIVE JUROR:  I don't believe so.

17         THE COURT:  Anything else?

18         PROSPECTIVE JUROR:  No.

19         THE COURT:  Thank you.

20         We are still on the question regarding you, any member

21    of your family ever been employed by the government.

22         PROSPECTIVE JUROR:  Number 33.  I was employed as

23    a systems analyst for the City of Tucson years ago.

24         THE COURT:  Anything about that that would keep you

25    from being fair to both sides in this case?

1      PROSPECTIVE JUROR:  No.

2      THE COURT:  Thank you.

3      PROSPECTIVE JUROR:  Juror 20.  My husband was a

4  police officer for the Buffalo Police Department and also deputy sheriff

5  for the Erie County Sheriff's Department in New York.

6      THE COURT:  Is he still employed there?

7      PROSPECTIVE JUROR:  He's retired.

8      THE COURT:  How long ago was it that he was employed

9  there?

10     PROSPECTIVE JUROR:  12 years ago.

11     THE COURT:  Anything about that employment that he

12 had, the work that he did, discussions that you had with him, that

13 would make you feel you could not be fair to both sides in this case?

14     PROSPECTIVE JUROR:  No, there is not.

15     THE COURT:  Thank you.

16     PROSPECTIVE JUROR:  I work for Department of

17 Interior, U.S. Geological Survey.

18     THE COURT:  Do you have any law enforcement duties

19 as part of that work with the Department of Interior?

20     PROSPECTIVE JUROR:  No.

21     THE COURT:  Anything about your work that would keep

22 you from being fair to both sides in this case?

23     PROSPECTIVE JUROR:  No.

24     PROSPECTIVE JUROR:  Juror Number 22.  My father was

25 a public building inspector.  My brother is a public schoolteacher.

1          THE COURT:  Anything about either of those

2   employments that would keep you from being fair to both sides?

3          PROSPECTIVE JUROR:  No, sir.

4          PROSPECTIVE JUROR:  Juror Number 23.  My wife used

5   to work for the University of Arizona as a teacher.

6          THE COURT:  Anything about that that would keep you

7   from being fair to both sides?

8          PROSPECTIVE JUROR:  No.  I don't believe so.

9          PROSPECTIVE JUROR:  Number 24.  My daughter is a

10  public -- federal public defender.

11         THE COURT:  Is she employed here in Tucson?

12         PROSPECTIVE JUROR:  In LA.

13         THE COURT:  Do you discuss the work she does with the

14  federal public defender's office?

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Do you believe that based on those

17  discussions that you have formed any beliefs or opinions that would

18  keep you from being fair to both sides in this case?

19         PROSPECTIVE JUROR:  Yes, I do.

20         THE COURT:  Thank you.

21         Counsel, any objection if we excuse Number 24?

22         MR. ROMO VEJAR:  No, Your Honor.

23         MS. KELLY:  No objection.

24         THE COURT:  Juror 24, thank you very much for your

25  service.  You are excused.

1           We'll call Juror Number 36.

2           Juror Number 36, would you have answered yes to any

3   of the questions I've asked so far?

4           PROSPECTIVE JUROR:  Yes, sir, two of them.  I live near

5   the border, a lot of illegal activity.  I would not be a fair juror.

6           THE COURT:  Counsel, any objection if we excuse Juror

7   Number 36?

8           MS. KELLY:  No objection.

9           MR. HORMEL:  No.

10           MR. ROMO VEJAR:  No, Your Honor.

11           THE COURT:  Thank you, Number 36.  You are excused.

12           We will call Juror Number 37.

13           Juror Number 37, would you have answered yes to any

14   of the questions I've asked so far?

15           PROSPECTIVE JUROR:  No, sir.

16           THE COURT:  Thank you.

17           PROSPECTIVE JUROR:  Juror Number 34.  I have two

18   cousins working border patrol in the Sonoita area and the Douglas

19   area and also U.S. Customs in Douglas, Arizona.

20           THE COURT:  We are going to have a number of border

21   patrol and some people from -- agents from Customs and Immigration

22   Enforcement testifying.  Do you feel that you could be a fair and

23   impartial juror in this matter?

24           PROSPECTIVE JUROR:  I don't think so.

25           THE COURT:  Thank you.

1      Counsel, any objection if we excuse Number 34?

2      MS. KELLY:  No objection.

3      MR. HORMEL:  No.

4      MR. ROMO VEJAR:  No, Your Honor.

5      THE COURT:  Thank you, Number 34.  You are excused.

6      We will call Juror Number 38.

7      Juror Number 38, would you have answered yes to any

8  of the questions I've asked so far?

9      PROSPECTIVE JUROR:  Yes.  I have heard of people

10  being taken into custody for this activity.  And my son is on the

11  Tucson Police Department.

12      THE COURT:  Okay.  Do you feel that given those -- do

13  you discuss the work that your son does in his work?

14      PROSPECTIVE JUROR:  Just in generalities sometimes,

15  but no specifics, no names.

16      THE COURT:  Anything about that, about your son's

17  employment -- we don't have any Tucson police officers, I don't

18  believe.

19      Do we have any witnesses who are police officers?  They

20  may have been involved in some manner.

21      Anything about that, the fact he's a Tucson police officer,

22  that would keep you from being fair to both sides in this case?

23      PROSPECTIVE JUROR:  I would like to think not.

24      THE COURT:  What was the other matter you

25  mentioned?

1    PROSPECTIVE JUROR:  I have heard on news report of

2    people being taken into custody for these crimes.

3    THE COURT:  In this case you will specifically and all

4    jurors will specifically have to set aside anything they have heard on

5    news reports, on TV, the Internet, the newspapers and not consider

6    any matters -- only those matters that you hear here in court.

7    Do you believe that information that you have would

8    keep you from being fair to both sides in this case?

9    PROSPECTIVE JUROR:  Again, I would like to think not.

10    THE COURT:  Well, if you were the government in this

11    case or if you were the defense in this case, would you want a juror of

12    your experiences, information, opinions, knowledge, sympathies,

13    prejudices sitting on this jury?

14    PROSPECTIVE JUROR:  I don't think so.

15    THE COURT:  Counsel, any objection if we excuse

16    Number 38?

17    MS. KELLY:  No objection.

18    MR. HORMEL:  No.

19    MR. ROMO VEJAR:  No, Your Honor.

20    THE COURT:  Thank you, Number 38.  Thank you for

21    your honesty.  You are excused.

22    We'll call Juror Number 39.

23    Juror Number 39, would you have answered yes to any

24    of the questions I've asked so far?

25    PROSPECTIVE JUROR:  No, Your Honor.

1          THE COURT:  Thank you.

2          I did see a hand midrow there.

3          PROSPECTIVE JUROR:  Number 5.  I am sorry, Your

4    Honor.  I should have added I have a stepson who is a policeman in

5    Utah.

6          THE COURT:  Anything about his job in Utah that would

7    keep you from being fair to both sides in this case?

8          PROSPECTIVE JUROR:  I don't believe so.

9          THE COURT:  Thank you.

10          PROSPECTIVE JUROR:  Juror Number 13.  I had a

11    nephew that was a police -- not police -- a guard at the Wilmot jail.

12          THE COURT:  Did you discuss the work that your relative

13    did either as a police officer or corrections officer?  Did you discuss

14    their work with them?

15          PROSPECTIVE JUROR:  Sometimes.

16          THE COURT:  Do you feel that you could be a fair and

17    impartial juror in this case?

18          PROSPECTIVE JUROR:  No.

19          THE COURT:  You are juror what?

20          PROSPECTIVE JUROR:  13.

21          THE COURT:  Any objection if we excuse Juror Number

22    13?

23          MS. KELLY:  No objection.

24          MR. HORMEL:  No, Your Honor.

25          MR. ROMO VEJAR:  No, Your Honor.

1          THE COURT:  Thank you, Number 13.  You are excused.

2          We will call Juror Number 40.

3          Juror Number 40, would you have answered yes to any

4    of the questions I've asked so far?

5          PROSPECTIVE JUROR:  No, Your Honor.

6          THE COURT:  Any other hands on that last question,

7    government employee or employment?

8          PROSPECTIVE JUROR:  Juror Number 28.  I was a

9    juvenile court probation officer in the '70s for Maricopa County.  I

10   currently have a son who is with the Pima County Sheriff's Department

11   and a son-in-law who is with Department of Corrections and works at

12   the Wilmot facility.

13         THE COURT:  With your own experiences, do you feel

14   anything about that would keep you from being fair to both sides in

15   this case?

16         PROSPECTIVE JUROR:  Definitely.

17         THE COURT:  As to the experiences of your son as a law

18   enforcement officer or your son-in-law?

19         PROSPECTIVE JUROR:  Son-in-law.

20         THE COURT:  Either of those do you feel you could --

21   would that keep you from being fair to both sides in this case?

22         PROSPECTIVE JUROR:  No.

23         THE COURT:  Thank you.

24         PROSPECTIVE JUROR:  Juror Number 31.  My father is

25   currently employed with the United States Postal Service.  I'm

1    currently employed with the State of Arizona.

2                    THE COURT:  Is your father a postal inspector or have

3    any law enforcement duties?

4                    PROSPECTIVE JUROR:  No.

5                    THE COURT:  Anything about his employment that would

6    keep you from being fair to both sides?

7                    PROSPECTIVE JUROR:  No.

8                    THE COURT:  Anything about your own employment that

9    would keep you from being fair to both sides?

10                   PROSPECTIVE JUROR:  Other than time constraints with

11   previously scheduled hearings for my job, no.

12                   THE COURT:  We will get to time constraints and

13   employment.  Thank you.

14                   I'm going to change it just a little bit, the same

15   question.  I will change it a little bit.

16                   Some of you have already answered it.  If you have

17   answered it already, don't answer it again.  We understand you have

18   already given us that information.

19                   Have you, any members of your family or any close

20   personal friends ever served as law enforcement officers?  We

21   expanded it to close personal friends.  I think almost all of you

22   addressed the issue regarding your family.

23                   Have any members of your family -- you, any members

24   of your family or close personal friends ever served as law

25   enforcement officers?

1          PROSPECTIVE JUROR:  Juror 7.  A personal friend is -- I

2    don't know his title.  Bob Stout, out of Phoenix, Arizona.

3          THE COURT:  He's in law enforcement?

4          PROSPECTIVE JUROR:  Yes, he is.

5          THE COURT:  Do you discuss the work that he does with

6    him?

7          PROSPECTIVE JUROR:  Mildly.  He's not close.  He's far

8    away.

9          THE COURT:  Anything about that -- anything about his

10   employment, conversations you have had with him, anything about

11   that that would keep you from being fair to both sides in this case?

12         PROSPECTIVE JUROR:  No, sir.

13         PROSPECTIVE JUROR:  Juror Number 40.  Your Honor, I

14   have some close personal friends that are DEA, FBI and border patrol

15   agents.

16         THE COURT:  We will have some border patrol agents

17   that testify here.  Have you discussed the work that your friends do as

18   law enforcement officers with them?

19         PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Do you feel that you could be fair to both

21   the government and the defense in this case?

22         PROSPECTIVE JUROR:  No, sir, I don't.

23         THE COURT:  Counsel, any objection if we excuse

24   Number 40?

25         MS. KELLY:  No objection.

1   MR. HORMEL:  No, Your Honor.

2   MR. ROMO VEJAR:  No, Your Honor.

3   THE COURT:  Thank you, Number 40.  You are excused.

4   We will call Juror Number 41.

5   Juror Number 41, would you have answered yes to any

6   of the questions I've asked so far?

7   PROSPECTIVE JUROR:  Yes.  Recently I was a witness in

8   a criminal trial for manslaughter.  And both of my boys are Marines.  I

9   have two sons that are Marines.

10   THE COURT:  The issue regarding you being a witness,

11   who called you as a witness, the defense or prosecution?

12   PROSPECTIVE JUROR:  The defense.

13   THE COURT:  Anything happen in that case in your being

14   a witness that you feel would keep you from being fair to both sides in

15   this case?

16   PROSPECTIVE JUROR:  No.

17   THE COURT:  Are either of your sons in the Marines

18   involved in law enforcement?

19   PROSPECTIVE JUROR:  No.

20   THE COURT:  Anything about their service that would

21   be -- that would keep you from being fair to both sides here?

22   PROSPECTIVE JUROR:  No.

23   THE COURT:  Thank you.

24   PROSPECTIVE JUROR:  I failed to tell you that I have

25   three nephews that are law enforcement and I have some friends that

1    work for the border patrol.

2              THE COURT:  The border patrol agents work in this area?

3              PROSPECTIVE JUROR:  Cochise County.

4              THE COURT:  Your nephews, what law enforcement?

5              PROSPECTIVE JUROR:  They are at the sheriff's

6    department.

7              THE COURT:  Here in this area.  Anything about any of

8    those friends or family members, their service, conversations you've

9    had with them, opinions you've formed that would keep you from

10   being fair to both sides in this case?

11             PROSPECTIVE JUROR:  No.

12             PROSPECTIVE JUROR:  Juror 29.  My father-in-law has

13   been retired from the Pima County Sheriff's  Department for 12

14   years.

15             THE COURT:  Anything about that that would keep you

16   from being fair to both sides in this case?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  Ladies and gentlemen, those of you that

19   are selected to serve as jurors in this case are going to become the

20   judges of the facts.  You're going to decide what happened in this

21   case.  I don't take any part in that.  I will advise you as to the law, but

22   you will make the determination as to the facts.

23             As part of that you are going to have to judge the

24   believability of witnesses that testify, what witnesses to believe, how

25   much of any witness' testimony to accept or reject.  In doing so you

1    will have to set a standard to judge witnesses by.

2              In setting that standard, you're going to have to take

3    into account, as you judge believability of a witness, the witness'

4    ability to see, hear or know the events the witness testified to.

5              The witness' memory of the event.

6              The witness' manner while testifying.

7              Any interest that the witness may have in the outcome

8    of the case.

9              Any motive, bias or prejudice of the witness.

10             Whether the witness contradicted himself or herself on

11   another occasion.

12             So those things are matters that you will consider in

13   determining the believability or credibility of a witness.

14             Now, in judging witnesses you will have to set a

15   standard and judge all witnesses by the same standard.

16             Is there anyone who could not judge the testimony of all

17   the witnesses by the same standards?

18             For example, is there anyone who would give more or

19   less weight to the testimony of a law enforcement officer than to the

20   testimony of any other witness just because the witness is a police

21   officer?

22             So we are talking about standards.

23             Can you judge all witnesses by the same standard?  And

24   is there anyone who feels they would give more or less weight to the

25   testimony of a police officer just because the person is a police officer?

1                      That is where we are.

2                      Anybody, number one, who feels they could not judge all

3       witnesses by the same standards?

4                      Anybody who feels that they would give the testimony of

5       law enforcement more or less weight simply because the person is a

6       law enforcement officer?

7                      Thank you.

8                      Have any of you ever studied or practiced law?

9                      PROSPECTIVE JUROR:  Number 22.  As part of my

10      degree at the University of Arizona, I've studied constitutional law.

11                     THE COURT:  Anything about that that would keep you

12      from being a fair and impartial juror in this case?

13                     PROSPECTIVE JUROR:  No, Your Honor.

14                     THE COURT:  Now, as I said you will be the judges of

15      the facts.  I will be the judge of the law.  I will consult with the

16      lawyers and then give you the law as it applies to this case.  Now, you

17      must follow the law as I give it to you.

18                     Is there anyone on the jury who would feel that if their

19      understanding of the law differs from my instructions to the jury

20      concerning the law, that you would be unable to follow the law as I

21      give it to you?

22                     In other words, any of you feel that if your belief about

23      the law is different from what I tell you the law is, that you would not

24      follow my instructions?

25                     The law requires the government to prove the defendant

1  guilty beyond a reasonable doubt.  The defendant is presumed by law

2  to be innocent which means the defendant is not required to prove

3  innocence or produce any evidence.  A defendant in a criminal case

4  has a right not to testify.  A defendant's failure to testify cannot be

5  considered by the jury in determining guilt or innocence.

6            Does anyone disagree with these important principles of

7  law or would anyone be unable or unwilling to follow these principles

8  of law?

9            Do any of you know each other?  Any one of you on the

10  panel know each other?

11            PROSPECTIVE JUROR:  We know each other.

12            THE COURT:  You are Number 17.

13            PROSPECTIVE JUROR:  17 and 19.

14            THE COURT:  If you and Juror 19 were selected to serve

15  as jurors and discuss this case, deliberate towards reaching a verdict

16  in this case, do you believe you could do that?  Or would your knowing

17  each other, your friendship impair your ability to do that?

18            PROSPECTIVE JUROR:  I don't think there would be any

19  problem with it.

20            THE COURT:  Number 19?

21            PROSPECTIVE JUROR:  I don't think I would have a

22  problem with that either.

23            THE COURT:  Thank you.

24            Ladies and gentlemen, we recognize that jury service is

25  an inconvenience to you.  We recognize we are taking you away from

1   your jobs and your families.  We are disrupting your daily routine.  But

2   it is, however, one of the most important duties that citizens of this

3   country are called upon to perform.

4           If people like you would not be willing to come forward

5   and serve as jurors, then our system of justice just would not work

6   because it depends on the citizen juror to come forward and serve to

7   keep our system working and operating and running.

8           So because of this I know you will not take this -- or do

9   not take this duty lightly.

10          We expect this case is probably going to take somewhere

11  between five and six days, perhaps more.  That's our best estimate.

12  We will be in trial until midweek next week.  It could go longer than

13  that because trials sometimes expand beyond our control and

14  sometimes they contract, they get shorter, also beyond our control.

15  The best estimate we can give you here today is that you can expect

16  to be here through midweek next week.

17          Our daily schedule will be from 9:30 until noon.  We will

18  take a break at midmorning.  And then it will be from 1:15 or 1:30,

19  depending how much time you want for lunch, until 5:00.  We will

20  rarely, if ever, go beyond 5:00 unless there's some kind of an

21  emergency.  Certainly if somebody has day-care issues, we are not

22  going beyond 5:00.

23          Now, we will have a break midafternoon.

24          Also, if any of you needs a break, all you have to do is

25  raise your hand and we take a break.  One person needs a break,

1    everybody needs a break.  That's the way we operate.  You are not

2    totally our captives here.

3                 The question to you is this:  Would the length of the trial

4    or our daily schedule pose an insurmountable, and I underline

5    "insurmountable," problem for any of you?

6                 PROSPECTIVE JUROR:  Juror Number 1.  I live in Sierra

7    Vista -- or Cochise County.  Excuse me.  I have the only running car.

8    My husband was laid off two weeks ago.  We really can't afford to stay

9    here.

10               THE COURT:  Well, we will be paying you the princely

11   sum of $40 a day.  So you feel that this economic hardship would be

12   too much for you to take?

13               PROSPECTIVE JUROR:  Yes, because we have to front

14   the money and then they pay us.

15               THE COURT:  I understand that.

16               Counsel, any objection if we excuse Juror Number 1?

17               MS. KELLY:  No objection.

18               MR. HORMEL:  No, Your Honor.

19               MR. ROMO VEJAR:  No, Your Honor.

20               THE COURT:  Number 1, thank you very much for your

21   service here today.  I appreciate you making the trip down here given

22   your circumstances.  Thank you very much.

23               We will excuse Number 1.

24               We will call Juror Number 42.

25               Juror Number 42, would you have answered yes to any

1    of the questions I've asked so far?

2                    PROSPECTIVE JUROR:  Yes, Your Honor, several.

3                    THE COURT:  What would that be?

4                    PROSPECTIVE JUROR:  Beginning with law enforcement,

5    I have numerous law enforcement friends and some are federal law

6    enforcement.  My neighbor is a DPS officer.

7                    Relatives on law enforcement, my brother-in-law and my

8    nephew are police officers.  My brother-in-law is retired from the

9    Phoenix Police Department.  My nephew currently works for Glendale

10   Police Department.

11                   Government employment, I have another nephew, a

12   firefighter.  My wife works for the United States Forest Service.

13                   I know Mr. Evans.  I know Mr. Hormel.  I know

14   Mr. Romo.  Mr. Romo and I were classmates graduating in 1975 from

15   law school.

16                   THE COURT:  Does your wife have law enforcement

17   duties where she works?

18                   PROSPECTIVE JUROR:  No, Your Honor.

19                   THE COURT:  Anything about the matters that you have

20   just mentioned that you feel would keep you from being fair to both

21   sides in this case?

22                   PROSPECTIVE JUROR:  It would be awkward.  Mr. Evans

23   and I were colleagues at the Attorney General's office for many years.

24   And both Mr. Hormel and Mr. Romo appeared in my courtroom when I

25   sat as a superior court judge.

1          THE COURT:  Very well.

2          Counsel, any objection if we excuse Juror Number 42?

3          MR. ROMO VEJAR:  No, Your Honor.

4          MR. HORMEL:  No, Your Honor.

5          MS. KELLY:  No objection.

6          THE COURT:  Thank you, Number 42.  Thank you for

7    your service.  You are excused at this time, sir.

8          We'll call Juror Number 43.

9          Juror Number 43, would you have answered yes to any

10   of the questions I've asked so far?

11         PROSPECTIVE JUROR:  Yes, sir, I would.  I have a close

12   personal friend that is an ICE agent.  I was a Pima County Sheriff's

13   Department recruit.  I have several friends on the Tucson Police

14   Department and several friends on the Pima County Sheriff's

15   Department.

16         THE COURT:  Your friend -- we do have several ICE

17   agents, Immigration and Customs Enforcement, that are going to

18   testify.

19         Would the fact that you have friends who are in that

20   agency, would that keep you from being fair to both sides in this case?

21         PROSPECTIVE JUROR:  I believe it would.

22         THE COURT:  Thank you.

23         Counsel, any objection if we excuse Number 43?

24         MS. KELLY:  No objection.

25         MR. HORMEL:  No, Your Honor.

1          MR. ROMO VEJAR:  No, Your Honor.

2          THE COURT:  Thank you, Number 43.  Thank you for

3   your service.  You are excused.

4          We will call Juror Number 44, please.

5          Juror Number 44, would you have answered yes to any

6   of the questions I've asked so far?

7          PROSPECTIVE JUROR:  No, Your Honor.

8          THE COURT:  We are on our schedule.  Would our

9   schedule or length of the trial or daily schedule pose an

10  insurmountable problem for any of you?

11         PROSPECTIVE JUROR:  Number 6.  I'm the primary

12  caregiver for my two parents.  One is 89.  The other one is 90.  My

13  father is visually impaired and my mother has dementia, spinal

14  stenosis and in a wheelchair.  It's difficult to get backup because my

15  mother doesn't take well to other people.  I could do my best.  If I

16  don't have backup that shows up, I have no one for them.

17         THE COURT:  Thank you.

18         Counsel, any objection if we excuse Number 6?

19         MS. KELLY:  No objection.

20         MR. HORMEL:  No, Your Honor.

21         MR. ROMO VEJAR:  No, Your Honor.

22         THE COURT:  Thank you for your service, Number 6.

23  You are excused.

24         We'll call Juror Number 45.

25         Juror Number 45, would you have answered yes to any

1    of the questions I've asked so far?

2                    PROSPECTIVE JUROR:  Yes, I would.  The biggest

3    concern I have is being fair in this trial.  I was born in Mexico, lived on

4    the border.  I was involved with an incident where two illegal aliens

5    were dying of thirst.  Their families had been taken away by people

6    that had crossed them over the border.

7                    THE COURT:  You feel -- let me stop you there.  Do you

8    feel that your experiences, first being born in Mexico, and living along

9    the border are such that would keep you from being fair to both sides

10   in this case?

11                   PROSPECTIVE JUROR:  Yes.

12                   THE COURT:  Thank you.

13                   Counsel, any objection if we excuse Number 45?

14                   MS. KELLY:  No objection.

15                   MR. ROMO VEJAR:  No, Your Honor.

16                   MR. HORMEL:  No, Your Honor.

17                   THE COURT:  Thank you, sir.  You are excused.

18                   We will call Juror Number 46.

19                   Juror Number 46, would you have answered yes to any

20   of the questions I've asked so far?

21                   PROSPECTIVE JUROR:  Yes, Your Honor.  I was

22   employed at the VA Hospital.  And I do have a letter from Cochise

23   College.  I am a faculty there right now.  So that would be -- the time

24   constraint would be an issue.  Do I hand that letter to you?

25                   THE COURT:  Well, you can hand it to the Deputy Clerk

1    there.

2              Time constraints -- in terms of employment, if I excused

3    everybody for employment, there would never be a juror in this

4    courtroom.  Everybody works.  Everybody has employment concerns.

5    We are basically a system of volunteer jurors.

6              And employment is generally not something that poses

7    an insurmountable problem unless there are some very -- your

8    employer states that because of your area of expertise that you would

9    be very difficult to replace.

10             At this point I will not excuse you for -- because of the

11   reason of employment.  I'm sorry.

12             Anything else?  Anybody else?

13             We are still dealing with our schedule which will be into

14   the middle of next week, we think, and 9:30 to 5:00.

15             PROSPECTIVE JUROR:  39.  I am the primary

16   breadwinner at home.  I'm afraid being out of work for that many days

17   would be an economic hardship.

18             THE COURT:  Does your company pay for -- do you work

19   for a company or self-employed?

20             PROSPECTIVE JUROR:  A company.

21             THE COURT:  Does your company pay you while you are

22   on jury service?

23             PROSPECTIVE JUROR:  I believe they only pay for the

24   first day of it.

25             THE COURT:  You don't know that that is a fact?

1          PROSPECTIVE JUROR:  I asked.  When I was working

2   yesterday, I asked at work and that is what I was told from the

3   immediate supervisor, that they pay for the one day.

4          THE COURT:  Counsel, any objection if we excuse

5   Number 39?

6          MS. KELLY:  No objection.

7          MR. HORMEL:  No, Your Honor.

8          MR. ROMO VEJAR:  No objection, Your Honor.

9          THE COURT:  Thank you, Number 39.  You are excused.

10          We'll call Juror Number 47.

11          Juror Number 47, would you have answered yes to any

12   of the questions I've asked so far?

13          PROSPECTIVE JUROR:  Yes, I would.  I retired from the

14   United States Army.

15          THE COURT:  While in the Army, did you serve in a law

16   enforcement capacity or did you ever serve in a court-martial?

17          PROSPECTIVE JUROR:  I did not.

18          THE COURT:  Anything about your service that would

19   keep you from being fair to both sides in this case?

20          PROSPECTIVE JUROR:  Not at all.

21          THE COURT:  Any other questions you would have

22   answered yes to?

23          PROSPECTIVE JUROR:  No other questions, Your Honor.

24          PROSPECTIVE JUROR:  I understand employment is not

25   an issue.  I have people who have flown in from Asia to meet with me

1   tomorrow.

2                    THE COURT:  Sorry?

3                    PROSPECTIVE JUROR:  I do work.  I have three jobs.  I

4   have a meeting scheduled, people who flew in from Hong Kong, that is

5   scheduled for tomorrow.

6                    THE COURT:  Do you have anybody else in your

7   company that can meet with these individuals?

8                    PROSPECTIVE JUROR:  No.

9                    THE COURT:  What time is this meeting going to take

10  place?

11                   PROSPECTIVE JUROR:  At 9:00 a.m.

12                   THE COURT:  How long do you anticipate the meeting is

13  going to be?

14                   PROSPECTIVE JUROR:  It is an all-day meeting until

15  5:00

16                   THE COURT:  I will have to think about that.

17                   PROSPECTIVE JUROR:  Number 9.  This is not about

18  time restraints, but I know Juror 46.  We go to the same church.  We

19  are not personal friends.  I'm Juror Number 9.

20                   THE COURT:  If you were both selected, would there be

21  any problem with both of you serving on the jury?

22                   PROSPECTIVE JUROR:  No.

23                   THE COURT:  Juror Number 46, is there any problem,

24  Number 46?

25                   PROSPECTIVE JUROR:  No.

1          THE COURT:  Anybody else on your insurmountable

2    problems?

3          PROSPECTIVE JUROR:  I'm scheduled to fly out to

4    Seattle for training next week for work.

5          THE COURT:  What day?

6          PROSPECTIVE JUROR:  I fly out on the 31st.  The

7    training is the 1st through the 5th.

8          THE COURT:  Is this something that has been set for

9    some time?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Is this something that can be rescheduled?

12          PROSPECTIVE JUROR:  No.  It's a brand-new financial

13    system.  I need to learn it, I guess.

14          THE COURT:  Any objection if we excuse Number 21?

15    You are 21?

16          PROSPECTIVE JUROR:  Yes.

17          MS. KELLY:  No objection.

18          MR. HORMEL:  No.

19          MR. ROMO VEJAR:  No objection.

20          THE COURT:  Juror 21 may be excused.

21          We will call Juror Number 48.

22          Juror 48, would you have answered yes to any of the

23    questions I've asked so far?

24          PROSPECTIVE JUROR:  My brother is employed by the

25    Department of Treasury.

1      THE COURT:  As a treasury agent?

2      PROSPECTIVE JUROR:  No.

3      THE COURT:  Anything about that that would keep you

4  from being fair to both sides in this case?

5      PROSPECTIVE JUROR:  No.

6      THE COURT:  Thank you.

7      Anybody else on the schedule?

8      PROSPECTIVE JUROR:  Juror Number 31.  I am

9  scheduled to appear and be available for testimony in three hearings

10  next week of the Pima County Juvenile Court.

11      THE COURT:  What type of hearings are these?

12      PROSPECTIVE JUROR:  They are dependency hearings

13  for Child Protective Service.

14      THE COURT:  Is there anyone in your agency that can

15  appear if you are not present?

16      PROSPECTIVE JUROR:  Possibly, but I'm not certain.

17      THE COURT:  At this point we will not excuse you.  We

18  will keep that in mind.

19      PROSPECTIVE JUROR:  Juror Number 32.  I found out

20  about a family medical emergency yesterday, the details this morning.

21  My brother is schedule for open-heart surgery on Thursday in

22  Massachusetts.  I have told him I will come out there and be with

23  him.

24      THE COURT:  Given that situation do you feel you

25  could -- would that affect your ability to serve as a fair and impartial

1  juror?

2  PROSPECTIVE JUROR:  His surgery is in Springfield,

3  Massachusetts.  I would be flying there.  I haven't made any

4  reservations yet.  I'm going to wait until I hear the results of the

5  surgery.  I anticipate I would go out over the weekend.

6  THE COURT:  Counsel, any objection if we excuse

7  Number 32?

8  MS. KELLY:  No objection.

9  MR. HORMEL:  No, Your Honor.

10  MR. ROMO VEJAR:  No, Your Honor.

11  THE COURT:  Number 32, you are excused.

12  We will call Juror Number 49, please.

13  Juror 49, would you have answered yes to any of the

14  questions I've asked so far?

15  PROSPECTIVE JUROR:  Just one.  I have a friend who is

16  a police officer.

17  THE COURT:  Anything about that employment -- have

18  you discussed the work with your friend?  Anything you've learned

19  based on their employment that would keep you from being fair to

20  both sides in this case?

21  PROSPECTIVE JUROR:  No, sir.

22  THE COURT:  Anything else, any other questions?

23  PROSPECTIVE JUROR:  No.

24  THE COURT:  Thank you.

25  Anybody else on our schedule?

1       Those of you jurors that have work issues, Juror Number

2   44, 46 and 31, over the lunch hour I'll discuss those matters with

3   counsel.  And then when you come back, we'll have some decision for

4   you depending on how many people we have left out there.

5       We are going to take a break for lunch at this time.

6   When you come back, sit exactly where you are sitting.  At this point

7   we have a seating chart.  If you move around, we will never be able to

8   get back on track again.

9       The other thing is:  When you are out there, don't strike

10   up any conversations with anybody.  Wear your numbers so people

11   know you are a juror.  It's a tendency of people to strike up

12   conversations here in the courthouse.  You don't want a conversation

13   that will cause us to have to have hearings to see what was said to

14   you.

15       You will see probably the parties out there in the

16   hallways.  They won't speak to you because they are under orders not

17   to.  They may nod hello.  That is it.  Don't engage them in any

18   conversation whatsoever.  That will cause a hearing.

19       Let's stand at recess until 1:15.  That will give us an

20   hour and 15 minutes for lunch.  We will see you at 1:15.  Thank you.

21       (The prospective panel was excused.)

22       THE COURT:  The record will reflect the presence of the

23   parties and the absence of the jury in this case.

24       Juror Number 46 is a nurse and apparently teaches in

25   the Cochise College.  This is what the letter says:

1    "Christy Rauch is currently employed as an associate

2    faculty for the nursing program at Cochise College.  The area she

3    covers is medical surgical nursing and this encompasses supervising

4    clinical rotations at the Life Care Center two days a week.

5          Due to the scarcity of BSN prepared nurses in the state

6    of Arizona, her absence would create great difficulty for our nursing

7    program.  Any accommodation the court can make in releasing her

8    from jury duty would be greatly appreciated."

9          That's the young woman that is seated there in chair

10   number 6, Juror Number 46.

11         My thought is that I don't want to have jurors who are

12   worried about work instead of being able to concentrate on what is

13   going on here.  And we have 22 jurors left to select from.  So I don't

14   think we'll run out of jurors if we excuse Juror Numbers 44, 46 and 31.

15   31 is the one that's going to testify at the dependency hearings next

16   week.

17         Ms. Kelly, Mr. Evans, is there any objection if we excuse

18   those three jurors and replace those three jurors that have work

19   problems?

20         MS. KELLY:  No, Your Honor.

21         THE COURT:  Mr. Hormel?

22         MR. HORMEL:  I don't have any objection, Your Honor.

23         THE COURT:  Mr. Romo?

24         MR. ROMO VEJAR:  Neither do I, Your Honor.

25         THE COURT:  I hope we don't come to the end of the

1   day and end up three short.  I think with 32 jurors we have left we

2   should be able to make it to impanel a jury with one alternate.

3            We'll stand at recess and reconvene at 1:15.  Thank

4   you.

5            (A recess was taken.)

6            THE COURT:  The record will reflect the presence of the

7   jury, counsel and the defendants.

8            We have changed our assistant, who is now Axibel

9   Barajas, a third-year law student at University of Arizona College of

10  Law.  And she works in my chambers as an extern.  She will be

11  helping us out for the rest of the jury selection process.

12           Juror Number 31, we had discussed your work situation

13  in terms of whether or not it was an insurmountable problem for you

14  to serve on this jury.

15           Do you feel that if you are selected and have to sit in

16  this case that the fact that you have these hearings already set that

17  that would keep you from giving your full attention to this trial?

18           PROSPECTIVE JUROR:  Yes, I do.

19           THE COURT:  Counsel, any objection if we excuse

20  Number 31?

21           MS. KELLY:  No objection.

22           MR. ROMO VEJAR:  No, Your Honor.

23           MR. HORMEL:  No, Your Honor.

24           THE COURT:  Thank you, Number 31.  You are excused.

25  We'll call Juror Number 50.

1          Juror Number 50, would you have answered yes to any

2   of the questions I've asked so far?

3          PROSPECTIVE JUROR:  Yes.  I have a question.  My

4   husband is working for Pima County, teacher.  And I have a problem

5   with my English understanding.

6          THE COURT:  Do you believe if you were selected that

7   you would have a difficulty understanding the English spoken by

8   myself and by the lawyers and the witnesses in this case?

9          PROSPECTIVE JUROR:  Yes, I do.

10         THE COURT:  Counsel, any objection if we excuse

11  Number 50?

12         MS. KELLY:  No objection.

13         MR. HORMEL:  No, Your Honor.

14         MR. ROMO VEJAR:  No, Your Honor.

15         THE COURT:  Thank you, Number 50.  You are excused.

16  We will call Juror Number 51.

17         Juror Number 51, would you have answered yes to any

18  of the questions I've asked so far?

19         PROSPECTIVE JUROR:  No, Your Honor.

20         THE COURT:  Thank you, sir.

21         We'll go back to Juror Number 44.  Juror number 44, you

22  said you had a work commitment tomorrow that would keep you there

23  all day and it would be people coming in from Asia to meet with you.

24         Do you feel that given the pressures of that work

25  commitment that you would not be able to give your full attention to

1    the trial that's going once the trial starts?

2            PROSPECTIVE JUROR:  Yes.

3            THE COURT:  Counsel, any objection if we excuse

4    Number 44?

5            MS. KELLY:  No objection.

6            MR. HORMEL:  No.

7            MR. ROMO VEJAR:  No.

8            THE COURT:  Number 44, thank you for your service.

9    You are excused.

10            We will call Juror Number 52.

11            Juror Number 52, would you have answered yes to any

12    of the questions I've asked so far?

13            PROSPECTIVE JUROR:  Yes.  I'm a federal employee.  I

14    know somebody, a close friend, in the border patrol.

15            THE COURT:  What area do you work in as a federal

16    employee?

17            PROSPECTIVE JUROR:  I work with the Federal

18    Investigative Services.  I'm an investigator.

19            THE COURT:  I don't know what that is.

20            PROSPECTIVE JUROR:  Office of Personnel

21    Management.

22            THE COURT:  So your investigations are not -- are they

23    criminal-type investigations or personnel?

24            PROSPECTIVE JUROR:  Background investigations for

25    security clearances.  We are termed law enforcement activity.

1          THE COURT:  Your investigations primarily are for people

2    who have applied for federal employment.  Is that correct?

3          PROSPECTIVE JUROR:  Or the military for security

4    clearances.

5          THE COURT:  You said you knew a person who worked

6    for border patrol?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  We will have three border patrol agents at

9    least that will testify.  Do you think the fact that you know a person on

10   the border patrol will keep you from being a fair and impartial juror in

11   this case?

12         PROSPECTIVE JUROR:  I do believe it will.

13         THE COURT:  Any objection if we can excuse Number

14   52?

15         MS. KELLY:  No objection.

16         MR. HORMEL:  No, Your Honor.

17         MR. ROMO VEJAR:  No, Your Honor.

18         THE COURT:  Juror 52 is excused.  Thank you for your

19   service.

20         We will call Juror Number 53.

21         Juror Number 53, would you have answered yes to any

22   of the questions I've asked so far?

23         PROSPECTIVE JUROR:  Yes.  My husband worked for a

24   company that had a federal contract with the Tucson sector of the

25   border patrol.

1          THE COURT:  What sort of a contract was it?

2          PROSPECTIVE JUROR:  He worked for the maintenance

3   part that fixed breaches in the border patrol wall -- the border wall.

4          THE COURT:  Anything about that work that your

5   husband did that would keep you from being fair to both sides in this

6   case?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  You feel you could not be fair?

9          PROSPECTIVE JUROR:  No, I don't.

10          THE COURT:  So you don't believe you could be fair to

11   both the government and the defense in this case?

12          PROSPECTIVE JUROR:  No.  From the lengthy

13   discussions I've had with the agents that protected him on the border

14   so he could do his work, I don't believe I could.

15          THE COURT:  Counsel, any objection if we excuse

16   Number 53?

17          MR. HORMEL:  No, Your Honor.

18          MR. ROMO VEJAR:  No, Your Honor.

19          MS. KELLY:  No objection.

20          THE COURT:  Thank you, Juror Number 53.  You are

21   excused.

22          We will call Juror Number 54.

23          Juror Number 54, would you have answered yes to any

24   of the questions I've asked so far?

25          PROSPECTIVE JUROR:  No, sir.

1          THE COURT:  Thank you.

2          Juror Number 46, you also had some issues regarding

3   your work.  I read the letter and shared that information with the

4   lawyers in this case.

5          Do you feel that if you were selected you would not be

6   able to give your full attention to this case because of your work

7   commitments?

8          PROSPECTIVE JUROR:  Yes, I do.

9          THE COURT:  Counsel, any objection if we excuse

10  Number 46?

11         MS. KELLY:  No objection.

12         MR. HORMEL:  No, Your Honor.

13         MR. ROMO VEJAR:  No, Your Honor.

14         THE COURT:  Juror 46, you are excused.  Thank you for

15  your service.

16         We will call Juror Number 55.

17         Juror Number 55, would you have answered yes to any

18  of the questions I've asked so far?

19         PROSPECTIVE JUROR:  Yes, Your Honor.  Employment.  I

20  worked for the federal government for over 20 years.

21         THE COURT:  In what area did you work, sir?

22         PROSPECTIVE JUROR:  Nuclear Regulatory

23  Commission.

24         THE COURT:  Anything about your work that would keep

25  you from being fair to both sides in this case?

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  Any other questions you would have

3   answered yes to?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Thank you.

6          Do any of you belong to any groups whose purpose or

7   goal is either -- whose purpose or goals are either for or against the

8   immigration laws of the United States?

9          Any of you belong to any groups whose purpose is to

10  either advocate for or against the immigration laws of the United

11  States?

12         Thank you.

13         Do any of you have strong feelings -- such strong

14  feelings either for or against the laws -- personal feelings either for or

15  against the laws -- the immigration laws of the United States that you

16  feel you could not serve as a fair and impartial juror in this case?

17         Tell us your number.

18         PROSPECTIVE JUROR:  14.

19         THE COURT:  Sir, you feel you could not be fair to both

20  sides in this case based on your feelings about the immigration laws?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Counsel, any objection if we excuse

23  Number 14?

24         MS. KELLY:  No objection.

25         MR. HORMEL:  No, Your Honor.

1          MR. ROMO VEJAR:  No.

2          THE COURT:  Thank you, Number 14.  You are excused.

3          We will call Juror Number 56.

4          Juror Number 56, would you have answered yes to any

5    of the questions I've asked so far?

6          PROSPECTIVE JUROR:  No, sir.

7          THE COURT:  You would not or would?

8          PROSPECTIVE JUROR:  I'm sorry?

9          THE COURT:  Would you have answered yes to any

10   question?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  I'm sorry.  Thank you.

13         Have any of you ever had what you would describe as a

14   disagreeable experience with any border patrol agents, customs agents

15   or other federal police officer?

16         Any of you ever had a very disagreeable experience with

17   any of those type of police officers?

18         Any of you ever had a disagreeable experience generally

19   with police officers, law enforcement officers?

20         PROSPECTIVE JUROR:  Number 35.  When I got one of

21   my DUIs, I didn't quite agree with the officer.  And I don't think he

22   treated me very well.

23         THE COURT:  Since you felt you weren't treated well in

24   that case, do you think you could be a fair and impartial juror in this

25   case?

1    PROSPECTIVE JUROR:  Maybe not.

2    THE COURT:  No?

3    PROSPECTIVE JUROR:  I don't think so.

4    THE COURT:  You are Juror Number?

5    PROSPECTIVE JUROR:  35.

6    THE COURT:  Counsel, any objection if we excuse

7    Number 35?

8    MS. KELLY:  No objection.

9    MR. ROMO VEJAR:  No, Your Honor.

10    MR. HORMEL:  No.

11    THE COURT:  Thank you, Juror 35.  You are excused.

12    We are going to call Juror Number 57.

13    Juror Number 57, would you have answered yes to any

14    of the questions I've asked so far?

15    PROSPECTIVE JUROR:  Yes.  I work for the Department

16    of Veterans Affairs.

17    THE COURT:  Anything to do with law enforcement?

18    PROSPECTIVE JUROR:  No.

19    THE COURT:  Anything about your job that would keep

20    you from being fair to both sides in this case?

21    PROSPECTIVE JUROR:  No.

22    THE COURT:  Thank you.

23    PROSPECTIVE JUROR:  Number 27.  I was stopped once

24    by the cops and they told me I was very rude, to say the least, more

25    like belligerent.

1    THE COURT:  Anything about that encounter that would

2    keep you from being fair to both sides in this case?

3    PROSPECTIVE JUROR:  No.

4    THE COURT:  Do any of you live near the border of --

5    the border cities, Nogales, Douglas, Naco, Palominas, Bisbee, Sierra

6    Vista?  Any of you live close to the border?

7    Would the fact you live close to the border, sir, would

8    that in any way keep you from being fair to both sides in this case?

9    PROSPECTIVE JUROR:  For work reasons I have to cross

10   and I live in Nogales.  And I don't know.  I really don't know with the

11   impact.

12   THE COURT:  If you were the government or if you were

13   the defense in this case, would you be satisfied to have a juror of your

14   experiences, your frame of mind, your opinions, your beliefs, your

15   sympathies, your prejudices sitting on this jury?

16   PROSPECTIVE JUROR:  I don't think so.

17   THE COURT:  Counsel, any objection if we excuse

18   Number 54?

19   MS. KELLY:  No objection.

20   MR. ROMO VEJAR:  No objection, Your Honor.

21   MR. HORMEL:  No, Your Honor.

22   THE COURT:  Thank you, Juror 54.  You are excused.

23   We'll call Juror Number 58.

24   Juror Number 58, would you have answered yes to any

25   of the questions I've asked so far?

1        PROSPECTIVE JUROR:  Yes, Your Honor.  The last one.  I

2   live in Rio Rico which, as you know, is north of the border.

3        THE COURT:  Anything about the fact that you live close

4   to the border that would keep you from being fair to both sides in this

5   case?

6        PROSPECTIVE JUROR:  I don't believe so.  I'm an

7   advocate for securing the border, but I don't believe that would affect

8   it either.

9        THE COURT:  If you were the government or the

10  defense, if you were in their shoes, you would be satisfied to have a

11  juror of your experiences sitting on this jury?

12       PROSPECTIVE JUROR:  Yes, I do.

13       PROSPECTIVE JUROR:  Number 9.  I live in Sierra

14  Vista.

15       THE COURT:  Anything about that that would keep you

16  from being fair to both sides in this case?

17       PROSPECTIVE JUROR:  No.

18       PROSPECTIVE JUROR:  Number 41.  I live in Sierra Vista

19  also.

20       THE COURT:  Anything about that that would keep you

21  from being fair to both sides in this case?

22       PROSPECTIVE JUROR:  Yeah, there is.

23       THE COURT:  Counsel -- you are 41?

24       PROSPECTIVE JUROR:  Yes.

25       THE COURT:  -- any objection if we excuse Number 41?

1          MR. HORMEL:  No, Your Honor.

2          MR. ROMO VEJAR:  No, Your Honor.

3          MS. KELLY:  No objection.

4          THE COURT:  Thank you, Juror 41.  You are excused.

5          We will call Juror Number 59.

6          Juror Number 59, would you have answered yes to any

7     of the questions I've asked so far?

8          PROSPECTIVE JUROR:  Yes, I would, Your Honor.  My

9     brother works for the federal government as a translator.  I'm a public

10    schoolteacher.

11         THE COURT:  Anything about either of those

12    employments that would keep you from being fair to both sides?

13         PROSPECTIVE JUROR:  No, sir.

14         PROSPECTIVE JUROR:  I live 20 miles north of

15    Douglas.

16         THE COURT:  Anything about that that would keep you

17    from being fair to both sides in this case?

18         PROSPECTIVE JUROR:  No, sir.

19         THE COURT:  Anybody else living close to the border?

20         Thank you.

21         Have you, a relative or a very close personal friend,

22    that's like somebody that's like part of your family, a very close

23    personal friend, have you, a relative or close personal friend ever been

24    convicted of any crime other than a minor traffic offense?

25              For purposes of this case, a drunk driving or DUI

1     conviction would not be a minor traffic offense.

2             So the question is:  Have you, a relative or a very close

3     friend ever been convicted of DUI and above?

4             PROSPECTIVE JUROR:  Number 12.  My husband was

5     just on trial for a felony about three weeks ago.

6             THE COURT:  Did you go to the hearings in his case?

7             PROSPECTIVE JUROR:  I did.

8             THE COURT:  Did you feel he was treated unfairly by the

9     criminal justice system?

10            PROSPECTIVE JUROR:  Yes.

11            THE COURT:  Do you feel that because of your

12    husband's experience, that he was being treated unfairly, do you feel

13    that you could still be a fair and impartial juror in this case?

14            PROSPECTIVE JUROR:  Yes.

15            THE COURT:  What offense was your husband being

16    tried for?

17            PROSPECTIVE JUROR:  It was abandonment and cruelty

18    to animals.  It was a Class 6 felony.

19            THE COURT:  Was he convicted of that offense?

20            PROSPECTIVE JUROR:  No.

21            THE COURT:  Anything else that happened in the trial

22    itself that would keep you from being fair to both sides in this case?

23            PROSPECTIVE JUROR:  No.

24            THE COURT:  Thank you.

25            PROSPECTIVE JUROR:  Number 9.  My brother-in-law

1    was convicted of DUI.

2              THE COURT:  Did you go to the hearings in his case?

3              PROSPECTIVE JUROR:  No, I didn't.

4              THE COURT:  Anything you heard about the case that

5    made you think he was treated unfairly or unjustly by the criminal

6    justice system?

7              PROSPECTIVE JUROR:  No.

8              THE COURT:  Thank you.

9              PROSPECTIVE JUROR:  Number 4.  I had a DUI in

10   1994.

11             THE COURT:  Did you feel that you were treated unfairly

12   or unjustly by the criminal justice system?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  Anything about that incident that would

15   keep you from being fair to both sides in this case?

16             PROSPECTIVE JUROR:  No, sir.

17             PROSPECTIVE JUROR:  Number 18.  My son pleaded in a

18   case.  It was a drug case.

19             THE COURT:  Did you go to the hearings in his case?

20             PROSPECTIVE JUROR:  Yes, I did.

21             THE COURT:  Did you feel he was treated unfairly or

22   unjustly by the criminal justice system?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  Anything about that incident that would

25   keep you from being fair to both sides in this case?

1          PROSPECTIVE JUROR:  No.

2          PROSPECTIVE JUROR:  Number 28.  My mother had

3   three brothers that were convicted of felonies.  One spent 13 years in

4   prison for running an illegal still out of the Arizona State Hospital.  One

5   was convicted of -- that was Uncle Bob.  I'm sorry.

6          Three of them.  One for writing bad checks.  And he did

7   spend time in prison.  One for robbery.  It wasn't armed robbery.  But

8   they thought -- he said he had a gun but it wasn't armed robbery.  But

9   he robbed a bank.

10          THE COURT:  Did you go to the hearings in those cases?

11          PROSPECTIVE JUROR:  No.  I was too young.

12          THE COURT:  From what you heard about those cases,

13   did you feel -- or do you feel that any of these relatives were treated

14   unfairly or unjustly by the criminal justice system?

15          PROSPECTIVE JUROR:  I thought -- Uncle Bob served 13

16   years.  I thought that was too much time.  But the rest of them

17   deserved what they got.

18          THE COURT:  Given those incidents do you feel you

19   could be a fair and impartial juror to both sides in this case?

20          PROSPECTIVE JUROR: I do.

21          THE COURT:  Thank you.

22          PROSPECTIVE JUROR:  Juror 49.  My son got a DUI.

23          THE COURT:  Did you go to the hearings in his case?

24          PROSPECTIVE JUROR:  I did not.

25          THE COURT:  Anything about that case that made you

1   feel he was treated unfairly or unjustly by the criminal justice system?

2                   PROSPECTIVE JUROR:  No.

3                   THE COURT:  Anything about the case that would keep

4   you from being fair to both sides in this case?

5                   PROSPECTIVE JUROR:  No.

6                   THE COURT:  Could I see counsel at sidebar?

7                   (At sidebar.)

8                   THE COURT:  I have pretty much completed my voir dire

9   at this point.

10                  The next thing is that each person will be asked to

11  answer the questions on this sheet that was just handed to you.

12                  Mr. Hormel, you submitted a question regarding SB

13  1070.  I'm not going to ask that question.  I think that's just an

14  issue -- that it is a political issue at this point.  It's a matter that's not

15  even law at this point.

16                  And they were asked about whether -- their feelings

17  about the immigration law specifically and we got their answers.  So

18  I'm not going to ask that question.

19                  Your objection to that is noted.

20                  Ms. Kelly, is there anything -- any questions that I didn't

21  ask that you wish asked?

22                  MS. KELLY:  Two, Your Honor.

23                  The first would be a follow-up on the criminal convictions

24  question that you just asked to expand it to close friends.

25                  THE COURT:  That was expanded to close friends.

1      MS. KELLY:  I'm sorry.  The second would be our

2  Question Number 12 which was stated in our proposed.  The second

3  part of it I have underlined which is obviously we have talked about

4  credibility of law enforcement, but, you know, the alleged victim in

5  this case is alleged to be an illegal alien, whether or not they would

6  have issues with the credibility of that particular witness.

7      THE COURT:  Well, I don't think that's -- we have

8  already asked about their feelings about immigration and immigration

9  laws, about other matters.  I don't think that's necessary to single out

10  that victim because then we've got to ask about the defendants

11  because it's going to come out they are illegal.  I don't think we want

12  to go there at this point.

13      MR. HORMEL:  I think it opens the door to our request.

14  I'm concerned that we have sort of a nonrepresentative jury from the

15  ethnic background.  I think that's why our question would be worth

16  asking.

17      THE COURT:  Well, unless you've got a Batson

18  challenge, your objection to that would be to the entire panel and not

19  to this group here.  You would have to have moved at some point to

20  strike the entire panel as being unconstitutionally constituted.

21      We excused the last gentleman, Juror 54, who clearly

22  was Hispanic from Nogales because he said that he couldn't be fair.

23  And so there was representation there.  We had to exclude him

24  because of his statement.

25      So you can make your motion if you want to make a

1 | Batson challenge at some point.

2 |         MR. HORMEL:  I will be doing that.

3 |         THE COURT:  But an objection to the entire venire I

4 | don't think is appropriate.  If that is your objection, it is overruled.

5 |         Any other questions other than the ones on the

6 | questionnaires that you wish asked?

7 |         Very well then.  Thank you.

8 |         (In open court.)

9 |         THE COURT:  Ladies and gentlemen, the next step is we

10 | are going to give you a questionnaire and I will ask each of you to

11 | answer that questionnaire.

12 |         Don't start writing because you just need to answer

13 | them orally.  You don't have to write anything down.  You can just

14 | answer them sitting where you are.  You don't have to stand up or

15 | anything else.

16 |         We'll start with Juror Number 58.  And just go right down

17 | the line, sir, and answer all the questions there.

18 |         PROSPECTIVE JUROR:  I'm Number 58.  I was born in

19 | Poughkeepsie, New York.

20 |         I have lived in Arizona since 1973.  I presently live in

21 | Rio Rico which is a border town near Nogales.

22 |         My educational background, I have a master's degree.

23 |         I am retired.  I am a former high school teacher.

24 |         I am married.  My spouse is also a retired educator.

25 |         I have two adult children.  I do not belong to any clubs

1   or organizations.

2            I have never sat as a juror.

3            THE COURT:  Was your degree -- what was your

4   master's degree?

5            PROSPECTIVE JUROR:  Education.

6            PROSPECTIVE JUROR:  I'm Juror 57.  I was born here in

7   Tucson.  I've lived in Arizona all my life.  Currently live in Tucson.

8            I have an associate degree in nursing.

9            I am employed at the Southern Arizona VA Health Care

10  System.

11           I am currently married.  My husband works as a fireman/

12  paramedic.

13           I have three children.  No clubs.

14           I sat once before for a jury for a DUI case.

15           THE COURT:  Do you recall what the verdict was in that

16  case?

17           PROSPECTIVE JUROR:  Guilty.

18           THE COURT:  Anything in that case that would keep you

19  from being fair to both sides in this case?

20           PROSPECTIVE JUROR:  No.

21           THE COURT:  Thank you.

22           PROSPECTIVE JUROR:  Number 3.  I was born in

23  Phoenix, Arizona.

24           I currently live here in Tucson.  I've lived in Arizona all

25  my life, 24 years.

1            I have four years of college.  No degree yet.

2            I'm employed with my family company, Mariposa

3     Properties.  It's the only job I've had so far.

4            Not married.  No kids.  I do not belong to any clubs or

5     organizations.

6            I have never sat as a juror.

7            PROSPECTIVE JUROR:  I'm Juror Number 4.  Born in

8     Teaneck, New Jersey.

9            Lived in Arizona for 28 years.  Currently in Tucson.

10           Educational background, a bachelor's degree.

11           I'm presently employed with Lovitt & Touche as an

12    account executive in commercial property and casualty insurance.

13           I am married.  My wife is employed by the University of

14    Arizona as the Vice Dean of the business school.

15           One child.  Various clubs and organizations.  I'm a ward

16    leader in Ward 3.

17           I've never sat as a juror.

18           PROSPECTIVE JUROR:  Juror Number 5.  I was born in

19    Toledo, Ohio.

20           Lived in Arizona seven years.  I live in Marana.

21           I have a bachelor in business administration.

22           I am retired.  I was a government administrator.

23           I'm married.  My husband is also retired.  He was a

24    corporate controller.

25           We have two between us, two children.  I belong to

1  several organizations that are community related.  That is where I
2  live.

3           And, yes, I sat on a jury.  It was a felony.  It was guilty.

4           THE COURT:  Anything happen in that case that would
5  keep you from being fair to both sides in this case?

6           PROSPECTIVE JUROR:  No.

7           THE COURT:  Do you remember what the charge
8  actually was?

9           PROSPECTIVE JUROR:  I'm sorry I don't.  It was burglary
10  of some kind.

11           PROSPECTIVE JUROR:  I am Number 55.  I was born in
12  Szeged, Hungary.

13           I lived in Tucson three different times.  I went to school
14  here to the University of Arizona.  And I was a visiting professor for
15  one year in 1990.  We moved here in 1999 permanently.  I live in
16  Tucson in the foothills area.

17           My educational background, I have a bachelor, master
18  and PhD in engineering.

19           I'm retired from work as a consultant for a consultant
20  firm in Washington, D.C.  I used to work for Conversion Engineering
21  designing nuclear power plants and worked for the Nuclear Regulatory
22  Commission basically evaluating the safety of nuclear power plants.

23           I am married.  I have two children.  My wife is retired.

24           I belong to the American Nuclear Association.

25           I have never sat on a jury.

1          THE COURT:  So your PhD was in engineering?

2          PROSPECTIVE JUROR:  Yes, nuclear engineering.

3          THE COURT:  I'm sorry.  I didn't hear you.

4          PROSPECTIVE JUROR:  Nuclear engineering.

5          PROSPECTIVE JUROR:  Number 7.  I was born in Los

6   Angeles, California.

7          I have lived in Arizona for 21 years.  I live in the Casas

8   Adobe neighborhood in Pima County.

9          My educational background is many units, but don't have

10  a degree, at the community college level.

11         I am employed with Gemology for the gem and mineral

12  show.

13         I'm an active volunteer and parent full time.  I'm an

14  active volunteer and working on a huge project for Project Graduation

15  as we speak now.

16         I am married.  My husband is with IBM.  He's a software

17  engineer.  I have three children.  I'm an active volunteer in the public

18  schools.

19         I have sat on a jury.  My last one was a murder case.  It

20  was guilty.

21         THE COURT:  How many times have you sat as a juror?

22         PROSPECTIVE JUROR:  Twice in Arizona, once in

23  California.

24         THE COURT:  Anything that happened in any of those

25  jury services that would keep you from being fair to both sides in this

1    case?

2             PROSPECTIVE JUROR:  No.

3             PROSPECTIVE JUROR:  Number 47.  Born in Newburgh,

4    New York.

5             I have lived in Arizona since 2006.  Currently live just

6    south of Catalina.

7             I'm a current student at NAU right now.

8             Presently employed, 24 years in the Army.  Since then

9    I've worked for the VA at the VA Hospital.

10             Currently married.  Wife is a special education teacher.

11    Two adult children.  Don't belong to any organizations.

12             Never sat as a juror.

13             PROSPECTIVE JUROR:  Number 9.  I was born in Carmel,

14    California.

15             I have lived in Arizona for nine years.  I live in Sierra

16    Vista close to the border.

17             My educational background is associate degree in

18    science and specialty degree in histology from the American Society of

19    Clinical Pathologists.

20             I am retired.  My former jobs were histology tech in the

21    hospital and worked in some retail jobs too.

22             I am married.  My husband is retired.  His former

23    employment is with the Pacific Gas and Electric company in California.

24             I have two children, grown children.  I belong to several

25    art associations.  I belong to the Huachuca Art Association and Sierra

1    Vista/Tombstone Association of the Arts in Tombstone.  And Tubac

2    Center of the Arts in Tubac.  And CASA, which is Contemporary Artists

3    of Southern Arizona.

4                 I have been a juror in California.  I was on a

5    manslaughter trial and a murder trial.  The murder trial was a mistrial.

6    And the manslaughter trial was an acquittal.

7                 THE COURT:  Anything happen in those cases that would

8    keep you from being fair to both sides in this case?

9                 PROSPECTIVE JUROR:  No.

10                THE COURT:  What is histology?

11                PROSPECTIVE JUROR:  The preparation of the surgical

12   specimens for the pathologist to read and determine what is the

13   problem or no problem of what was removed in surgery.

14                THE COURT:  Thank you.

15                PROSPECTIVE JUROR:  Number 10.  Wenatchee,

16   Washington.

17                We moved here in '72.  Tucson, Arizona.

18                Seven years beyond high school.

19                Retired.  RN.  Worked as an RN.

20                Widowed.  Four children.  Right now I don't belong to

21   any clubs or organizations.

22                I have never sat as a juror.

23                PROSPECTIVE JUROR:  Number 11.  I was born in

24   Louisville, Kentucky.

25                Lived in Arizona for 27 years.  I live in Tucson, Arizona.

1    I just have a few units of general education -- college
2    education.
3    I am an at-home mom.  My former job is ticket sales
4    with Toros.  Not married.  I have one son.  And not part of any clubs or
5    organizations.
6    And never been on a jury.
7    PROSPECTIVE JUROR:  Number 12.  I was born in
8    Tucson.
9    I have lived in Arizona all my life.  I live in Saint David
10   which is in Cochise County.
11   I have an associate degree in nursing.
12   I am not employed.  I worked in south Phoenix in a
13   hospital in obstetrics for about 15 years.
14   I am married.  My husband is a retired schoolteacher and
15   a volunteer fireman and EMT.
16   I have five children.  I don't belong to any clubs or
17   organizations.
18   And I have never served on a jury.
19   PROSPECTIVE JUROR:  I'm Number 59.  Born in Tucson,
20   Arizona.
21   Lived in Arizona 47 years.  I live in Tucson, northwest
22   area.
23   I have a master of education.
24   I am currently employed by the Amphitheater School
25   District.

1               Married.  My husband is in hotel restaurant

2     management.  Two children.  Belong to the Arizona Education

3     Association.

4               And I've never sat as a juror.

5               PROSPECTIVE JUROR:  Number 56.  I was born in

6     Canutillo, Texas.

7               I have lived in Arizona 60 years.  I live in McNeal in

8     Cochise County.

9               I graduated from high school and I have some college.

10              I am retired.  I worked for the Cochise County school

11    superintendent's office.

12              I am a widow.  I have two daughters.

13              I belong to a small club in McNeal.  And I also volunteer

14    for the fire department in Elfrida.  And I belong to the Cochise County

15    SAT Association which is the Sheriff's Assist Team.

16              I have sat as a juror twice in the '60s.  They were civil

17    cases.

18              THE COURT:  Anything about your service as a juror that

19    would keep you from being fair to both sides in this case?

20              PROSPECTIVE JUROR:  No, sir.

21              THE COURT:  The organization is the Sheriff's Assist

22    Team?

23              PROSPECTIVE JUROR:  Yes, sir.

24              THE COURT:  Do you have any law enforcement duties

25    as part of that?

1          PROSPECTIVE JUROR:  All I do is fingerprint and file at

2    the Bisbee jail.

3          THE COURT:  Anything about that that would keep you

4    from being fair to both sides in this case?

5          PROSPECTIVE JUROR:  No, sir.

6          PROSPECTIVE JUROR:  Number 15.  Born in Utica, New

7    York.

8          Lived in Arizona 32 years.  Live in Sahuarita right now.

9          I have an engineering degree from Syracuse.  MBA from

10   the U of A.

11         Engineering manager at Raytheon.  Before that I was a

12   TB director long time ago.

13         Divorced.  Four children.  Boys.  No clubs.

14         I did sit on a jury.  It was an assault case.  Verdict was

15   not guilty.

16         THE COURT:  Anything about that experience that would

17   keep you from being fair to both sides in this case?

18         PROSPECTIVE JUROR:  No.

19         PROSPECTIVE JUROR:  Number 33.  I was born in

20   Wisconsin.

21         I have lived in Arizona for 35 years.  I live in Shadow

22   Hills, northwest side of Tucson.

23         I have an Associate of Applied Science in computers.

24   Some classes at the university.

25         I am not employed.  I used to work at the City of Tucson

1    as a system analyst and also as a software instructor.

2              Married.  My spouse is employed at Tucson Electric

3    Power.  I have two children.  I'm a member of Angel Charity for

4    Children.  And I work with Tucson Child and Family Resources.

5              I have sat on a jury twice.  Both long time ago.  One was

6    a civil case and one was a deportation case.  The civil case I think they

7    were not awarded any money.  The deportation case was guilty.

8              THE COURT:  Anything about either of those experiences

9    that would keep you from being fair to both sides in this case?

10             PROSPECTIVE JUROR:  No.

11             PROSPECTIVE JUROR:  Number 17.  Born in Peoria,

12   Illinois.

13             Lived in Arizona since 1990.  Currently live here in

14   Tucson.

15             I have an associate degree in electronics technology and

16   extensive education in theology and ministry.

17             Currently employed by Most Holy Trinity Catholic Church

18   and an ordained deacon in the Diocese of Tucson.  Before that I

19   worked for Caterpillar Incorporated for 35 years.

20             I am married.  My spouse currently is the office manager

21   of a small construction company.  We have two children.  Two

22   grandchildren.  Do not currently belong to any clubs or organizations.

23             I have never sat as a juror.

24             PROSPECTIVE JUROR:  18.  Born in Anchorage, Alaska.

25             I've lived in Arizona since '93.  I live in Tucson on the

1    east side.

2         I just have a high school diploma.

3         And I am employed with Cox Media.  Former jobs are

4    usually clerical.

5         I am married.  My husband is a mechanic.  We have

6    three boys.  I don't belong to any clubs.

7         And I sat on a jury once.  It was a DUI.  They ended up

8    pleading out of court.

9         THE COURT:  Anything about that that would keep you

10   from being fair to both sides in this case?

11        PROSPECTIVE JUROR:  No.

12        THE COURT:  Thank you.

13        PROSPECTIVE JUROR:  I'm Juror 19.  I was born in

14   Douglas, Arizona.

15        I have lived in Arizona all my life with the exception of

16   two years in California.  We have lived here in Tucson forever.

17        My educational background is three years of college.

18   And because of a family tragedy, I didn't finish my last year.

19        I was able to work in the mental health profession for 28

20   years.  I worked at St. Mary's Hospital, Kino Hospital.  And the last 12

21   years in administration.

22        I am married.  My husband is a retired educator.  I have

23   five children.  All grown.  I don't belong to any organizations right

24   now.

25        I sat as a juror for a DUI case like ten years ago and the

1    case was dismissed.

2              THE COURT:  Anything about that that would keep you

3    from being fair to both sides in this case?

4              PROSPECTIVE JUROR:  No.

5              PROSPECTIVE JUROR:  I'm Juror Number 20.  I was born

6    in Buffalo, New York.

7              I've lived in Arizona since '98.  I live in the Oro Valley

8    area.

9              My education, master plus in education.  I'm presently

10   employed as a substitute teacher in the Amphitheater School District.

11   Former job, a high school teacher, 34 years, an inner city public high

12   school in Buffalo.

13             Widow.  I have two grown children.  I belong to two

14   women's golf clubs and some volunteer organizations.

15             I sat as a juror on a DUI case.  The verdict was guilty.

16             THE COURT:  Anything about that that would keep you

17   from being fair to both sides in this case?

18             PROSPECTIVE JUROR:  No, sir.

19             PROSPECTIVE JUROR:  I'm Number 48.  Born in

20   Schenectady, New York.

21             Lived here since 2001.  I live in the southeast section of

22   Tucson.

23             I have a bachelor of science in marketing.

24             I work at Cross Country Automotive Services.  I've

25   worked in the hotel industry as well as sales support.

1          I'm married.  My wife is an RN.  She sells Avon.  I have

2    one child.  No clubs.

3          I have never sat on a jury.

4          PROSPECTIVE JUROR:  Number 22.  I was born and

5    raised in Tucson for 22 years.  North side of Tucson.

6          I have a bachelor in education, history and political

7    science and a graduate student.

8          I'm employed at a restaurant.

9          Not married.  No children.  I am a volunteer mediator

10   with the Arizona Attorney General and a member of the U of A rugby

11   team.

12         And never sat as a juror.

13         THE COURT:  What sort of mediation do you do with the

14   attorney general's office?

15         PROSPECTIVE JUROR:  I've done civil rights mediations

16   as well as one informal marriage counseling.

17         THE COURT:  Anything about that that would keep you

18   from being fair to both sides in this case?

19         PROSPECTIVE JUROR:  No, Your Honor.

20         PROSPECTIVE JUROR:  I am 23.  I was born in Cedar

21   Rapids, Iowa.

22         I have lived in Arizona eight years.  Live in Oro Valley.

23         Educational background is aerospace engineering with a

24   master in business administration.

25         Presently employed with Honeywell as an engineering

1  manager.  I have had previous jobs in the midwest also in
2  engineering.
3            I am married.  My spouse is currently on a medical
4  disability.  She used to be a professor at the University of Arizona.
5            I have three children.  Not currently in any clubs or
6  organizations.
7            I have sat as a juror once in a civil case.  It was a
8  medical malpractice suit.  There was not a conviction.
9            THE COURT:  Anything about that that would keep you
10  from being fair to both sides in this case?
11            PROSPECTIVE JUROR:  No, sir.
12            PROSPECTIVE JUROR:  I'm Juror 37.  Amsterdam, the
13  Netherlands.
14            Lived in Arizona since '06.  Currently live in Cochise
15  County.
16            I have a BA in English.  I am currently retired.  My last
17  job was a project manager in high tech industries.
18            I am married.  My husband is also retired.  Prior was a
19  software engineer.  We have no children.  My organization is horse
20  related.
21            Yes, I have sat on a jury.  DUI case, guilty.
22            THE COURT:  Anything about that that would keep you
23  from being fair to both sides in this case?
24            PROSPECTIVE JUROR:  No, sir.
25            PROSPECTIVE JUROR:  I'm number 25.  Born in

1    Emporia, Kansas.

2            Lived in Arizona 20 years.  I live in Tucson about two

3    miles north of here.

4            I have three years of college.  I am employed by Small

5    Planet Bakery.  I used to manage movie theaters.

6            Single.  No children.  Do not belong to clubs or

7    organizations.

8            I've never sat as a juror.

9            PROSPECTIVE JUROR:  I'm 26.  Born in Montebello,

10   California.

11           Lived in Arizona since 1993.  Live on the north side of

12   Tucson.

13           I have a bachelor in engineering and a master in

14   business.  I am an engineer at Raytheon.  I have had engineering jobs

15   in California for Hughes and Northrop.

16           I am married.  My spouse works at Raytheon.  She's a

17   contract manager.  We have two children.  No clubs.

18           Never sat as a juror.

19           PROSPECTIVE JUROR:  I'm 27.  Born in Evanston,

20   Illinois.

21           Lived in Arizona since 1960.  I live in Tucson on the west

22   side.

23           I have a BS.  I am long retired.  Last job I had was with

24   Hughes Aircraft.

25           I am divorced.  No children.  I belong to many

1   organizations and clubs.

2              I have sat as a juror three times.  DUI, a burglary and a

3   murder case.  All three were guilty.

4              THE COURT:  Anything about that that would keep you

5   from being fair to both sides in this case?

6              PROSPECTIVE JUROR:  No.

7              PROSPECTIVE JUROR:  Juror Number 28.  I was born in

8   Richmond, Indiana.

9              Lived in Arizona since 1957 with just one 13-year

10   absence.  Currently live in the northwest unincorporated county area.

11              I have a bachelor's degree in social welfare.  I have a

12   master in recreational administration and tourism studies.  I am not

13   presently employed.  Retired.  I basically was a juvenile court

14   probation officer, field officer, and then I went into hotel management.

15              I am married.  My husband is a retired commercial

16   airline pilot.  We have three grown children.

17              I am a very active member of the Boy Scouts of America

18   organization.  The Amateur Science Fiction Authors and Artists Club.

19   And I'm a card carrying member of the NRA.

20              I have been a juror twice.  Once for a lawsuit and once

21   for a case of intent to commit fraud.  He was found guilty.

22              THE COURT:  Anything about that that would keep you

23   from being fair to both sides in this case?

24              PROSPECTIVE JUROR:  No.

25              THE COURT:  In your membership with the NRA, do you

1    hold any office in the NRA?

2              PROSPECTIVE JUROR:  No.  I'm not an active member,

3    just a card carrying member.  I just support them.

4              PROSPECTIVE JUROR:  Number 29.  I was born in

5    Winslow, Arizona.

6              I have lived in Arizona all my life.  I live in Oro Valley.

7              Bachelor of Science in nursing.

8              I am presently employed at University Medical Center as

9    an operating nurse manager of orthopedic surgery.  I've been there 25

10   years.

11             Married.  My husband is self-employed as a surgical first

12   assistant.  He has his own business.

13             I have three children.  I belong to the Association of

14   Operating Room Nurses.

15             And I have sat as a juror four times.  Two robbery cases,

16   both were guilty.  One civil case.  We found for the -- it was a fall at a

17   store.  We found for the store.  And one was assault with a deadly

18   weapon and that was guilty.

19             THE COURT:  Anything about that that would keep you

20   from being fair to both sides in this case?  Anything about any of those

21   cases that would keep you from being fair in this case?

22             PROSPECTIVE JUROR:  No.

23             PROSPECTIVE JUROR:  Number 30.  Born in Casa

24   Grande, Arizona.

25             Lived in Arizona all my life.  Currently live in Tucson,

1    central.

2              Bachelor degree.  Currently unemployed.  History in

3    sales and marketing with hotel and tourism industry.

4              Married.  My husband is self-employed as a contractor to

5    the mining industry.

6              One child.  Belong to several organizations in Tucson.

7              I have not sat on a jury.

8              PROSPECTIVE JUROR:  I'm 51.  Born in Jacksonville,

9    Illinois.

10             I've lived in Arizona 47 years.  I live on the northeast

11   part of Tucson.

12             High school education.

13             I'm retired.  I worked 41 years in the communications

14   field.

15             I am married.  My wife is retired and she also worked in

16   the communications field.

17             I have two adult children.  I do not belong to any clubs.

18             And I haven't served on any jury.

19             PROSPECTIVE JUROR:  I'm Number 49.  I was born in

20   Tucson.

21             I've lived here 51 years in the northeast area.

22             I have some college education.

23             I am presently employed at Raytheon.  I have formerly

24   been a teacher's aide and administrative assistant.

25             I'm married.  My husband has been at IBM for 30 years.

1   We have two grown boys.  I'm not currently with any organizations or

2   clubs.

3                     I have never sat as a juror.

4                     THE COURT:  Thank you.

5                     Could I see counsel at sidebar?

6                     (At sidebar.)

7                     THE COURT:  This completes the voir dire.  Next is for

8   you to take your strikes.

9                     Does the government pass the panel?

10                    MS. KELLY:  Yes, Your Honor.

11                    MR. HORMEL:  I think the panel is not representative of

12   our community.

13                    THE COURT:  State your objection again.

14                    MR. HORMEL:  My objection is that the panel is not

15   representative of our community.  And the court mentioned there were

16   two Hispanic jurors out of -- I think we had 32.  That would be a

17   percentage of less than 1/16th.  It would be about six percent, I

18   believe.  That is not reflective of our community at large.  It's not a

19   jury with anybody's peers.  Basically it's a -- really white jury and I

20   don't think it's fair.

21                    THE COURT:  We had actually, I think, four or five

22   Hispanics on the panel.  Some were struck based on their assertions

23   that they could not be fair and impartial jurors.

24                    We have left today Juror Number 19 who is Rose Madrid

25   who is a Hispanic and we have Number 22 whose last name is Padilla,

1    also Hispanic, left after our voir dire.

2              So your objection at this time is overruled.  And we will

3    go on to the strikes at this time.

4              Thank you.

5              (In open court.)

6              THE COURT:  Ladies and gentlemen, we are closer to

7    reaching the end of our process here.

8              The next step is that the attorneys are going to make

9    their final selections.  That takes at least 45 minutes to an hour.  So

10   you are going to have a fairly long break in this matter.

11             So what I'm going to ask you to do is to come back -- it's

12   2:30.  I'm going to ask you to come back at 3:30.  At that point we

13   will announce those jurors that have been selected.

14             When you come back in, just wait out in the hallway.

15   We will come out and get you.  And then all of you sit in the back and

16   we will call those that have been selected.

17             Those of you who are still sitting in the back and have

18   not yet been called forward, I still need you here because this process

19   isn't complete.

20             And so I want all of you to be sure to come back so we

21   can complete the jury selection process.

22             So we will stand at recess until 3:30 and that should

23   give us enough time.

24             Thank you.

25             (The prospective panel was excused.)

1          THE COURT:  Counsel, we will do alternating strikes.  So

2   the sheet will come first to the government who will make their first

3   strike and then move on to defense counsel and then back to the

4   government and all the way through until we have completed all of the

5   strikes.  As I said one of your strikes is for the alternate.

6          And once we complete this process, we should have 12

7   jurors and one alternate seated to hear this jury -- to hear this trial.

8          We'll stand at recess until you complete your strikes.

9          MR. HORMEL:  I guess I don't really understand when

10   you say one of our strikes is for the alternate.

11          THE COURT:  The way it will work out, there will be --

12   you'll have five strikes that you will use on the body of the thing.

13   Then you will end up with four alternates to pick from?

14          THE CLERK:  Two.

15          THE COURT:  Each one gets a strike?

16          THE CLERK:  Yes, sir.

17          THE COURT:  There will actually be four people that

18   would be the alternates and each of you get one strike on those.  So

19   you end up with one alternate.

20          MR. HORMEL:  After we do five strikes.  We have 32

21   right now, right?  And then we do five strikes each?

22          THE COURT:  Government has six plus the alternate.

23   Each of you have five plus the alternate.  We should end up with 13

24   people left over.

25          MR. HORMEL:  Okay.

1     THE COURT:  Very well, counsel.  We will take a recess

2  while you make your strikes.

3          (A recess was taken.)

4     THE COURT:  The record will reflect the presence of the

5  parties, counsel, defendants and the presence of the jury.

6          The clerk will now call out the numbers of those jurors

7  who have been selected.  As your number is called out, please come

8  forward.

9     THE CLERK:  Juror 47.  Juror Number 10.  Juror Number

10  11.  Juror 59.  Juror 33.  Juror 17.  Juror 19.  Juror 20.  Juror 22.

11  Juror 23.  Juror 37.  Juror 51.  Juror 49.

12          THE COURT:  Counsel, do we have the proper jurors in

13  the jury box?

14          Ms. Kelly?

15          MS. KELLY:  Yes, Your Honor.

16          THE COURT:  Mr. Hormel?

17          MR. HORMEL:  Yes.

18          THE COURT:  Mr. Romo?

19          MR. ROMO VEJAR:  Yes.

20          THE COURT:  Ladies and gentlemen, those of you who

21  were not selected, I want to thank you for your work and being here

22  all day.  Thank you very much.  Your service is absolutely necessary to

23  the courts.  You are excused at this time.  Thank you.

24          The record will reflect present in the jury box are the

25  jurors that were chosen.

1       At this time we will have you sworn.

2       (The jury panel was sworn.)

3       THE COURT:  Ladies and gentlemen of the jury, now

4   that you have been sworn, I will give you some preliminary

5   instructions to guide your participation in the trial.

6       As you previously were told, the defendant is charged in

7   Count 1 of the indictment with conspiring to commit hostage taking in

8   violation of Section 1203 of Title 18 of the United States Code.

9       In order for the defendant to be found guilty of that

10   charge, the government must prove each of the following elements

11   beyond a reasonable doubt:

12       Now, I will refer to the defendants in the singular.  As

13   you know you have to make your decisions as to each defendant

14   separately.  But the instructions that you will get now and later apply

15   to both defendants unless I specifically tell you that one of those

16   instructions does not apply to both defendants.

17       I will read it in the singular as "defendant," but you are

18   to take it to mean both defendants in this case.

19       First, beginning on a date unknown and ending on or

20   about September 24, 2009, there was an agreement between two or

21   more persons to commit the crime of hostage taking as charged in

22   Count 2 of the superseding indictment.

23       And each element that I read to you are elements that

24   the government has to prove as to each defendant beyond a

25   reasonable doubt.

1          Second, the defendant became a member of the

2   conspiracy knowing of at least one of its objects and intending to help

3   accomplish it.

4          Third, one of the members of the conspiracy -- I'm sorry.

5          Third, a conspiracy is a kind of criminal partnership, an

6   agreement of two or more persons to commit one or more crimes.  The

7   crime of conspiracy is an agreement to do something unlawful.  It does

8   not matter whether the crime agreed upon was committed.

9          For a conspiracy to have existed, it is not necessary that

10  the conspirators made a formal agreement or that they agreed on

11  every detail of the conspiracy.  It is not enough, however, that they

12  simply met, discussed matters of common interest, acted in similar

13  ways or perhaps helped one another.

14         You must find that there was a plan to commit at least

15  one of the crimes alleged in the indictment as an object of the

16  conspiracy with all of you agreeing as to the particular crime which the

17  conspirators agreed to commit.

18         One becomes a member of a conspiracy by willfully

19  participating in the unlawful plan with the intent to advance or further

20  some object or purpose of the conspiracy, even though the person did

21  not have the full knowledge of all of the details of the conspiracy.

22         Furthermore, one who willfully joins an existing

23  conspiracy is as responsible for it as the originators.  On the other

24  hand, one who has no knowledge of a conspiracy but happens to act in

25  a way that furthers some object or purpose of the conspiracy does not

1    thereby become a conspirator.

2            Similarly, a person does not become a conspirator

3    merely by associating with one or more persons who are conspirators

4    nor merely by knowing that a conspiracy exists.

5            In Count 2 of the indictment, the defendant is charged

6    with taking a person hostage in violation of title -- of Section 1203(a)

7    of Title 18 of the United States Code.

8            In order for the defendant to be found guilty of that

9    charge, the government must prove each of the following elements

10   beyond a reasonable doubt:

11           First, the defendant intentionally seized or detained a

12   person;

13           Second, the defendant threatened to kill, injure or

14   continued to detain that person; and

15           Third, the defendant did so with the purpose and

16   intention of compelling a third person to act or refrain from acting in

17   some way as an explicit or implicit condition for the release of the

18   seized or detained person.

19           A person is "seized" or "detained" when the person is

20   held or confined against his or her will by physical restraint, fear or

21   deception for an appreciable period of time.

22           The fact that a person may initially agree to accompany

23   the hostage taker does not prevent a later seizure or detention.

24           The defendant is charged in Count 3 of the superseding

25   indictment with harboring of an alien in violation of Section

1    1324(a)(1)(A)(iii) of Title 8 of the United States Code.

2          In order for the defendant to be found guilty of that

3    charge, the government must prove each of the following elements

4    beyond a reasonable doubt:

5          First, Julio Cesar Lopez-Trujillo was an alien;

6          Second, Julio Cesar Lopez-Trujillo was not lawfully in the

7    United States;

8          Third, the defendant knew or acted in reckless disregard

9    of the fact that Julio Cesar Lopez-Trujillo was not lawfully in the United

10    States;

11          Fourth, the defendant harbored Julio Cesar Lopez-Trujillo

12    for the purpose of avoiding his detection by immigration authorities.

13          An alien is a person who is not a natural-born or

14    naturalized citizen of the United States.  An alien is not lawfully in this

15    country if the person was not duly admitted by an immigration officer.

16          It will be your duty to find from the evidence what the

17    facts are.  You and you alone are the judges of the facts.  And you will

18    have to apply to those facts the law which the court will give to you.

19    You must follow that law whether you agree with it or not.

20          Nothing the court may say or do during the course of the

21    trial is intended to indicate nor should be taken by you as indicating

22    what your verdict should be.

23          The evidence from which you will find the facts will

24    consist of:

25          The testimony of witnesses;

1          Documents and other things received into the record as

2   exhibits; and

3          Any facts the lawyers agree or stipulate to that the court

4   may instruct you to find.

5          Certain things are not evidence and must not be

6   considered by you:

7          Statements, arguments and questions by lawyers are not

8   evidence.  Objections to questions are not evidence.  Lawyers have an

9   obligation to their client to make an objection when they believe

10  evidence being offered is improper under the rules of evidence.

11         You should not be influenced by the objection or by the

12  court's ruling on it.  If the objection is sustained, ignore the question.

13  If it is overruled, treat the answer like any other.

14         Anything you may have seen or heard outside the

15  courtroom is not evidence and must be disregarded.  You are to decide

16  the case solely on the evidence presented here in the courtroom.

17         There are two kinds of evidence, direct and

18  circumstantial.  Direct evidence is direct proof of a fact such as

19  testimony of an eyewitness.  Circumstantial evidence is proof of facts

20  from which you may infer or conclude that other facts exist.

21         I will give you further instructions on these as well as

22  other matters at the end of the case but have in mind you may

23  consider both kinds of evidence.

24         It will be up to you to decide which witnesses to believe,

25  which witnesses not to believe and how much of any witness'

1    testimony to accept or reject.

2            In deciding the believability of any witness, consider

3    among other things:

4            The witness' ability to see, hear or know the events the

5    witness testified to;

6            The witness' memory of the event;

7            The witness' manner while testifying;

8            Any interest in the outcome of the case;

9            Any motive, bias or prejudice of the witness;

10           Whether the witness contradicted himself or herself on

11   another occasion.

12           As I have told you when questioning you, there are three

13   basic rules you must keep in mind:

14           First, the defendant is presumed innocent;

15           Second, the burden of proof is always on the

16   government;

17           Third, that burden is to prove guilt beyond a reasonable

18   doubt.

19           I will now say a few words to you about your conduct as

20   jurors.

21           First, keep an open mind throughout the trial and do not

22   decide what the verdict should be until you and your fellow jurors have

23   completed your deliberations at the end of the case.

24           Second, because you must decide this case based solely

25   on the evidence received in the case and on my instructions as to the

law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.

Thus, until the end of the case or unless I tell you otherwise, do not communicate with anyone in any way and do not let anyone communicate with you in any way about the merits of the case or anything to do with it.

This includes discussing the case in person, in writing, by phone, or electronic means via e-mail, text messaging or any Internet chat room, blog, website or other feature.

This applies to communicating with your fellow jurors until I give you your case for your deliberation and it applies to communicating with anyone else, including your family members, your employer and the people involved in the trial.  Although, you may notify your family and your employer that you have been seated as a juror in the case.

If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict, do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it.

Do not do any research such as consulting dictionaries,

1   searching the Internet or using other reference materials.

2           Do not make any investigation or in any other way try to

3   learn about the case on your own.

4           The law requires these restrictions to ensure the parties

5   have a fair trial based on the same evidence that each party has an

6   opportunity to address.

7           A juror who violates these restrictions jeopardizes the

8   fairness of the proceedings and a mistrial could result that would

9   require the entire trial process to start over again.

10          If any juror is exposed to any outside information,

11   please notify the court immediately.

12          If you wish you may take notes during the trial.  But if

13   you do so, leave them in the jury room when you leave at night.

14          Remember, they are for your own personal use.  They

15   are not to be given or read to anyone else.

16          Whether you take notes or not, we will not be able to

17   furnish you a written transcript of the testimony.  So please pay close

18   attention to the witnesses.

19          Now, it's almost 4:00.  The first order of business would

20   be for the attorneys to make their opening statements to you.  That

21   may take us beyond 5:00.

22          At this point what we are going to do is recess for the

23   day today.  We will start tomorrow morning at 9:30 or as close to 9:30

24   as we can get because I have a number of hearings starting at 8:30.

25   My hopes are that I can finish by 9:30.  We may make you wait for a

1   few minutes.  Hopefully not.

2          When you come in tomorrow, you will come straight into

3   the jury room.  Ms. Mejia, who is now the bailiff, will show you to the

4   jury room and will give you the combination to the jury room.

5          So when you come in tomorrow, you will have the

6   combination to the jury room.  Don't come into the courtroom until we

7   come to get you.  Sometimes we are discussing legal matters that are

8   not for the jurors to hear because we haven't settled the legal matters

9   until the end of the case.

10          Go straight into your jury room and we will come there

11   to get you.

12          At this time we will stand at recess.  Have a good

13   evening.  See you tomorrow morning at 9:30.  Thank you.

14          (The jury was excused at 3:52 p.m.)

15          THE COURT:  The record will reflect the jury has

16   withdrawn, counsel and defendant are present.

17          Ms. Kelly, any record the government wishes to make

18   regarding the jury selection?

19          MS. KELLY:  No, Your Honor.

20          THE COURT:  Mr. Hormel?

21          MR. HORMEL:  Nothing beyond what I already stated,

22   Your Honor.

23          THE COURT:  Thank you.

24          Mr. Romo?

25          MR. ROMO VEJAR:  No.

1          THE COURT:  We will start with your opening statements

2    tomorrow morning.  I hope we will start at 9:30, but we will see what

3    happens with my calendar.  I have six matters before this case starts.

4          If you are going to use props of some kind or exhibits in

5    your opening statements, tell each other, show each other the exhibits

6    that you are going to use so that we don't have to stop and deal with

7    objections in the middle of somebody's opening statement.

8          Ms. Kelly.

9          MS. KELLY:  Briefly, I think there may be some

10   confusion.

11         Peach was stating that because we renumbered the

12   indictment, she just wanted to make sure that the record was clear,

13   because we keep referring to Count 2 which has actually been

14   dismissed and it was Count 3.  I'm not sure how we can best do that

15   for the court.

16         THE COURT:  We made the record.  It has been made

17   and the defense has agreed we would go forward with that.  That is

18   not an amended indictment.  What it is, it is a redacted indictment for

19   purposes of dealing with the jury.

20         Of course we will go through the verdict forms as with

21   the 1, 2 and 3 counts we have now.  We will make a record how these

22   counts correspond to the superseding indictment; that Count 1 of this

23   redacted indictment is Count 1 of the superseding and I believe Count

24   2 of this indictment is Count 3 of the superseding and Count 3 is

25   Count 7 of the superseding.

1    So all of those matters, just to keep the record straight,

2    we will do that once we have the verdict.

3    At this point as I understood our conversations

4    yesterday, there was no objection to using this three-count indictment

5    to avoid prejudice to the defendant by listing all of the counts and the

6    extraneous material that has been dismissed in this case.

7    Is that understanding where we are, Ms. Kelly?

8    MS. KELLY:  Yes.

9    THE COURT:  Any objection?

10    MS. KELLY:  No.

11    THE COURT:  Mr. Hormel?

12    MR. HORMEL:  No.

13    THE COURT:  Mr. Romo?

14    MR. ROMO VEJAR:  No.

15    Mr. HORMEL:  There is an exhibit listed here, the

16    handwriting exemplar for Mr. Bonilla.  That is not coming in, right?

17    THE COURT:  No.

18    MR. HORMEL:  I just wanted to make sure.  It's on here.

19    I don't want it referred to in opening statements.

20    THE COURT:  What we left open, and I meant to ask you

21    yesterday, we talked about -- we had a hearing regarding whether or

22    not the expert witness was going to be able to identify the specific

23    document that's been referred to as a ledger.

24    I asked you if you could find some case that said that

25    was appropriate.  I didn't see any case from you that that was an

1    appropriate thing for the expert witness to do.

2              MS. KELLY:  I'm sorry, Your Honor.  If Jeff Ellis could

3    refer to the ledger as a ledger?

4              THE COURT:  Yes.  That this was a ledger that was found

5    in this house.  He's going to be allowed to testify generally that

6    ledgers are prepared in these type of cases and are found in these

7    type of cases.

8                   As far as I know, he's not a fact witness that found this

9    particular ledger.  Obviously the people that found it can testify that

10   they found this thing that they believe is a ledger.

11             MS. KELLY:  Right.

12             THE COURT:  He's going to be able to testify generally

13   about what ledgers are.

14             MS. KELLY:  Yes, that is our understanding.

15             THE COURT:  He's not going to identify this particular

16   document as a ledger?

17             MS. KELLY:  Correct.

18             MR. ROMO VEJAR:  My understanding by your ruling is

19   that nobody would be able to say this is a ledger.

20             THE COURT:  They will be able to say -- they don't need

21   to call it a ledger.  They can say that it appears to them to be a

22   notation regarding aliens and money and so forth.

23             MR. ROMO VEJAR:  They cannot refer to it as a "pollo"

24   list or ledger.

25             THE COURT:  I don't believe there's any basis for doing

1   that.

2          MS. KELLY:  I think that we have other fact witnesses

3   who are obviously investigators in this particular area.  David Slagle,

4   for example, is one of the individuals who collected the ledger and was

5   involved in finding the ledger.  I think that -- obviously we have Jeff

6   Ellis testifying what a ledger is.

7          If somebody else who also works in the same field says,

8   "I found a ledger," I feel he should be able to make that statement.

9          THE COURT:  I don't know that those things are

10  actually -- I have to see what your witness -- your witness can

11  describe what he found and describe, in other words what it is, what

12  they are for, who makes them.

13         You know, in terms of this is your -- let me back up.

14         The expert witness can talk about these documents that

15  are found that they refer to -- you are referring to as a ledger, also

16  referred to as a "pollo" list.

17         I'm not comfortable particularly with this.  I don't know

18  where that "pollo" list came from.  That's the first time I've ever heard

19  that used by anybody in these type of cases.  They obviously exist, I

20  suppose, if somebody is saying they do.

21         Your expert is not going to be able to identify this

22  particular document.  I think we will leave the door open to see what

23  your fact witness has to say about that document and whether or not

24  it can be characterized as a ledger.  He can describe it, explain it and

25  then we will go from there.

1          MS. KELLY:  On another issue just for a point of clarity,

2     we have litigated a lot of things.

3          Mr. Evans and I were just talking about the fact that the

4     government does not intend to get into the fact that at the trailer

5     there was marijuana.  I haven't seen a motion to preclude from

6     defense on that.  I want to make sure we are all on the same page.

7          THE COURT:  There's no basis to get into issues

8     regarding marijuana.

9          MR. HORMEL:  I would agree.  I guess one should never

10    assume and that is a good lesson.  We have had a lot to litigate.

11         In my mind I had compartmentalized never-charged

12    conduct never a part of this case.  There is some sort of secondary

13    testimony of things that might have been seen.  There wasn't any

14    marijuana found.

15         I would say that any mention of marijuana would be

16    absolutely inappropriate.

17         THE COURT:  And that's correct because it has no

18    probative value in this case and clearly its prejudicial nature would

19    greatly outweigh any probative value it might have that's not readily

20    apparent to me.

21         It is not a matter you -- you need to instruct your

22    witnesses.  And, counsel, you need to be careful in your

23    cross-examination to not raise that issue or open that door.

24         Ready for tomorrow at 9:30.  We will stand at recess.

25         (The proceedings concluded at 4:00 p.m.)

108

C E R T I F I C A T E

I, Dianne Davenport, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/  Dianne Davenport                    November 16, 2011