1

1

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | CR 09-2343-TUC-FRZ |
| vs. ) | |
| ) | November 3, 2010 |
| YURIS BONILLA-GUIZAR and ) | Tucson, Arizona |
| CARLOS ARMANDO CALIXTRO- ) | |
| BUSTAMANTE, ) | |
| ) | |
| Defendants. ) | |

JURY TRIAL - DAY 7

BEFORE:  HONORABLE FRANK R. ZAPATA
UNITED STATES DISTRICT JUDGE
405 W. CONGRESS, COURTROOM 5-A
TUCSON, ARIZONA 85701

A P P E A R A N C E S

FOR THE GOVERNMENT:  MS. KRISTEN KELLY and MR. JOHN EVANS, ASSISTANT UNITED STATES ATTORNEYS.

FOR DEFENDANT BONILLA-GUIZAR:  MR. PETER HORMEL, ATTORNEY AT LAW.

FOR DEFENDANT CALIXTRO-BUSTAMANTE:  MR. JESUS ROMO VEJAR, ATTORNEY AT LAW.

THE INTERPRETER:  MR. DEREK SULLY.

Dianne Davenport
405 W. Congress, Suite 1500
Tucson, Arizona 85701
(520)205-4266

Proceedings prepared by computerized realtime translation

2

1                                    INDEX

2     PROCEEDING                                          PAGE

3     Record on Alternate Juror                              4

4     Jury Questions                                        15

5     Verdict                                               21

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

P R O C E E D I N G S

(Call to order of court, 9:30 a.m.)

THE CLERK:  09-2343, United States of America versus Yuris Bonilla-Guizar and Carlos Armando Calixtro-Bustamante, on for jury trial.

MR. EVANS:  Good morning, Your Honor.  John Evans, Assistant United States Attorney, for the government.

THE COURT:  Good morning.

MR. HORMEL:  Good morning.  Peter Hormel for Mr. Bonilla.  He appears with me in custody assisted by the court interpreter.

THE COURT:  Good morning.

MR. ROMO VEJAR:  Good morning, Your Honor.  Jesus Romo on behalf of Carlos Calixtro, present, in custody.

THE COURT:  Good morning.

What has happened is that we received a call last night from Juror Number 51 that he was ill and that he didn't know if he would be able to be here this morning for the deliberations.  Then he called back in this morning.  I have not spoken to him.  He left messages with my clerk -- or you spoke to him?

THE CLERK:  I spoke with him.

THE COURT:  She apparently spoke with him this morning.  He said he was too ill to come in this morning.  We are in a situation here where we are one juror short.

What we can do here is we can bring in the jury and

1    explain to them that because we don't have the full complement of

2    jurors that we will reconvene -- see if he's better tomorrow morning.

3    Or what we can do is attempt to call in the alternate to come in to

4    take the place of that juror.

5              Mr. Evans, what's your take on this issue?

6              MR. EVANS:  Your Honor, the defense and I have

7    discussed this.  Our first option is to see whether or not the alternate

8    can actually be brought back in because we don't know how long this

9    juror is going to be sick and what the illness is.

10             We have not -- I understand, based upon your litany this

11   morning, we don't have -- we haven't made contact with the

12   alternate.

13             THE COURT:  We have contacted the alternate.  She

14   says she can be back here to fill in for the other juror.  I asked the

15   clerk to ask the alternate just this question without discussing

16   anything:  Has she discussed the case with anyone?  Her answer was

17   yes to that question.

18             We don't know what was said, what sorts of discussions,

19   what she means.  We just wanted to know has she talked to anybody.

20   I didn't want the clerk to get into any discussions with the juror.

21             She is available by telephone if there is some questions

22   that you wish the court ask of her regarding that issue.  She is

23   available and she did make that statement.  We did not go into it

24   because, of course, the clerk was instructed not to and the court did

25   not want to discuss anything with the juror in the absence of counsel

1    and the defendants.  That is where we are.

2         MR. ROMO VEJAR:  Your Honor, it is true that we spoke.

3    I think the first option -- and I think we didn't get this clear.  My first

4    option would be to wait for the juror who is ill.  Of course, we need to

5    find out whether or not -- is it a he? -- he had a temporary illness or is

6    it a cold that could go away in a day or so.  And if the jury can wait for

7    those days, then I would rather have that done, Judge.

8         THE COURT:  The information we have -- I haven't

9    spoken to him either.  This is the information he gave to the clerk.

10   That he was ill to his stomach and throwing up last night and did not

11   feel like coming in this morning.

12        MR. ROMO VEJAR:  Which one is this juror?

13        THE COURT:  51, number 13.  As they come across this

14   way, number 9, 10, 11, 12, 13.  The one sitting next to the alternate.

15        MR. ROMO:  The last one.

16        THE COURT:  Apparently what he said this morning was

17   that he is still ill, feels worse this morning, and is having other

18   symptoms, other stomach problems, symptoms this morning he didn't

19   have last night.

20        Those things can be a 24-hour thing, food poisoning,

21   things that come and go fairly quickly.

22        MR. ROMO VEJAR:  We discussed we have several

23   options.  One of the options is the alternate if she is not tainted.  The

24   third option is to agree to 11 jurors.

25        THE COURT:  That is acceptable.  It has to be done in

1    writing by the defendants.

2              MR. ROMO VEJAR:  I would suggest that we talk to the

3    juror to see if she's available.

4              THE COURT:  To the alternate?

5              MR. ROMO VEJAR:  Yes.

6              THE COURT:  She is available, but with that caveat we

7    told her.  We probably need to ask her what was the nature of her

8    discussions and with whom.

9              MR. HORMEL:  Right.  I would definitely request that she

10   be -- some voir dire be done to ascertain where she's at with that,

11   whether those discussions included things like driving out there or who

12   knows.  You never know what people do.

13             THE COURT:  That's correct.

14              Mr. Evans.

15             MR. EVANS:  I would -- my first option, based upon your

16   description and now knowing which one that is out, is to -- let's call

17   the juror -- alternate juror, voir dire, see if she has done any

18   independent investigation.

19             My sense with most jurors is the first thing they do is

20   talk to the family about what they had and I don't think the family can

21   taint them.  Let's have that discussion.

22             THE COURT:  We will try to reach her.  Do you wish to

23   do it over the telephone?  She's readily available by telephone.

24             MR. HORMEL:  Yes, Your Honor.

25             MR. ROMO VEJAR:  Yes, sir.

1              THE COURT:  Mr. Evans?

2              MR. EVANS:  Yes, Your Honor.

3              THE CLERK:  Juror 49?

4              JUROR 49:  Yes.

5              THE COURT:  Good morning, Juror Number 49.  This is

6 Judge Zapata and I'm in the courtroom with the attorneys for the

7 government.  Also, the attorneys for the defendant.  And also the

8 defendants are in the courtroom.

9              You received a call from the clerk to see if you were

10 available to come back to substitute for one of the jurors who has

11 become ill.

12              It's my understanding that in your conversation with the

13 clerk, you were asked -- I asked the clerk to ask you this question,

14 whether you had discussed this case with anyone.  And your answer to

15 that was yes.  Can you tell us what discussions you had and with

16 whom.

17              JUROR 49:  There were people here at work and they

18 were asking me what the case was about.

19              THE COURT:  So people at work asked you what the

20 case was about?

21              JUROR 49:  Yes.

22              THE COURT:  And did you discuss the facts with them

23 specifically or did you tell them generally what this case was about?

24              JUROR 49:  What do you mean by "specifically"?

25              THE COURT:  Did you go through the whole thing and

1    tell them facts about the case and who said what and what witness

2    said what and so forth?

3                    JUROR 49:  Somewhat.

4                    THE COURT:  The people that you were talking to, did

5    they ask you questions about how you stood on the case, how you felt

6    about the case, how you felt about the witnesses?  Did you discuss

7    those types of matters?

8                    JUROR 49:  No.

9                    THE COURT:  Did you do any investigation on your own

10   into the case since yesterday?

11                   JUROR 49:  Yes.

12                   THE COURT:  What would that be?

13                   JUROR 49:  I looked in the newspaper.  I didn't find

14   anything.

15                   THE COURT:  No, there's nothing.  What else did you do?

16   Anything else?

17                   JUROR 49:  The Internet, the newspaper.

18                   THE COURT:  Did you find anything on the Internet

19   about the case?

20                   JUROR 49:  No.

21                   THE COURT:  Counsel, Mr. Evans, do you have any

22   questions that you would like to ask of Juror Number 49?

23                   MR. EVANS:  No, Your Honor.

24                   THE COURT:  Mr. Hormel?

25                   MR. HORMEL:  Yeah, if the court could inquire whether

1  she had through these discussions or whether through what she did

2  with the Internet she found anything or not, formed any opinions

3  about the case.  We are not asking what they are obviously in the

4  absence of the jurors.

5  THE COURT:  You heard the statement by Mr. Hormel,

6  Juror Number 49.  Have you formed any opinions about the case from

7  the discussions that you had with the other people?

8  JUROR 49:  No, huh-uh.

9  THE COURT:  Mr. Hormel, any follow up to that?

10  MR. HORMEL:  No.

11  THE COURT:  Mr. Romo.

12  MR. ROMO VEJAR:  I have a question that I would like to

13  ask you, please.  This is Jesus Romo.

14  Judge, if you could ask the juror if anybody with whom

15  she discussed the case expressed an opinion as to what they would

16  have done if they were in her position.

17  THE COURT:  Did anybody that you discussed the case

18  with make any opinions to you or statements to you about what they

19  would do if they were on the case as a juror?

20  JUROR 49:  No, not at all.

21  MR. ROMO VEJAR:  Will you inquire if she has a fair and

22  impartial mind at this point?

23  THE COURT:  Do you feel -- you recall the instructions of

24  the court.  Do you feel that you can at this point rejoin the process

25  and be a fair and impartial juror in this case?

1          JUROR 49:  I do.

2          THE COURT:  We will take one minute to discuss this

3     with the attorneys.

4          The record will reflect the presence of counsel and

5     defendants.  Juror Number 49 is no longer on the telephone.

6          Well, what is your choice at this point?  My next question

7     is to ask her -- if you want to go with the alternate juror, I'll ask her if

8     she can be here by noon to start the deliberations.  Tell the rest of the

9     jurors to come back at 1:00 or noon or whenever she can be here.

10    Obviously we don't have to be here.

11         MR. ROMO VEJAR:  That would be my preference.

12         MR. HORMEL:  If you would give me a moment to

13    consult with my client.

14         (Off-the-record discussion between defense counsel and

15    defendant.)

16         MR. HORMEL:  We are in agreement with that, Your

17    Honor.

18         THE COURT:  Mr. Evans.

19         MR. EVANS:  We ask the court proceed to bring the

20    alternate in as soon as she can get here and ask the jury to

21    deliberate.

22         THE COURT:  Why don't you put her back on the phone.

23         Juror Number 49, we are back on the phone.  We are

24    going to need you here as soon as you can be here to continue to take

25    the place of the juror that is ill and to begin the deliberations.

1     How soon do you think you can be here to do that?

2            JUROR 49:  I can close down here at work and I believe

3     it will take me 30 to 40 minutes.

4            THE COURT:  That would be wonderful.  Once you get

5     here, go into the jury room and have somebody call Ms. Mejia because

6     we'll have a very brief -- have all the jurors in for some very brief

7     instructions.

8            JUROR 49:  Okay.

9            THE COURT:  Don't discuss the case with anyone or

10    allow anyone to discuss it with you.

11           JUROR 49:  I didn't hear that.

12           THE COURT:  Do not discuss the case with anyone or

13    allow anybody to discuss it with you.

14           JUROR 49:  Okay.

15           THE COURT:  There may be questions at work.  You tell

16    them you are coming back.  You can't tell them anything more than

17    that.  Thank you.

18           JUROR 49:  Thank you.

19           MR. ROMO VEJAR:  Your Honor, before you let her go --

20           THE COURT:  What was that?

21           MR. ROMO VEJAR:  Judge, you had suggested initially

22    1:00.  I suppose -- I wanted 1:00 because I needed to do some things

23    this morning.

24           THE COURT:  The only thing is that we can do -- my

25    thought is she can come in and start.  I will bring in the jury right now

1   to tell them we have a juror ill, we have a juror that is being replaced

2   and to tell them they have to start their deliberations all over again

3   when that juror arrives.  We can do that now.  When she arrives they

4   can start the deliberations.

5             Do you have any objection to that?

6             MR. ROMO VEJAR:  No.

7             MR. HORMEL:  No, Your Honor.

8             MR. EVANS:  No, Your Honor.

9             THE COURT:  Then bring the jury in.

10            (The jury was seated.)

11            THE COURT:  Thank you.  Please be seated.  The record

12  will reflect the presence of the jury, counsel and the defendants.

13            Ladies and gentlemen of the jury, one of your number,

14  Juror Number 51, is ill and cannot be here today.  He became ill last

15  night.

16            We are going to have to call back the alternate juror,

17  Juror Number 49.  We have spoken to her.  She can be here in, she

18  said, I believe, half an hour to 45 minutes.  So she can be here in half

19  an hour to 45 minutes.  So you will have to wait.  Do not deliberate

20  until she gets here.

21            And when she gets here, you have to start your

22  deliberations all over from scratch.  You can't just go from where you

23  were yesterday because she wasn't here.  She has to be here present

24  to hear all of your deliberations from the very beginning.  You have to

25  go back to square one and start all over again.

1    If that includes reviewing evidence, that -- I know you

2    asked for the DVD yesterday -- has to be done so she has the same

3    information all of you have in discussing this case and making this

4    decision.

5    At this point you can have a break for half an hour,

6    forced break unfortunately, but she says she would be here in half an

7    hour to 45 minutes.  Take a break for half an hour.  We should be --

8    the clerk points out because you are already in deliberation, she has to

9    accompany you on your break.

10    So she will take you down to the restaurant.  And if you

11    want to get coffee or sit around there at the restaurant, she will go

12    with you.  When you break for lunch today, the same situation will

13    happen.  She will either go with you and take you all to lunch or else

14    you can all order lunch in the jury room.  That is something you can

15    discuss among yourselves once the other juror arrives.

16    From here on out when you are here, she will have to

17    take you out and bring you back.  At this point you are excused and

18    hopefully you can start your deliberations again in half an hour.

19    (The jury was excused.)

20    THE COURT:  The record will reflect the jury has

21    withdrawn, counsel and defendant are present.

22    Mr. Evans, any further instructions that you believe we

23    need to give to the jury at this point?

24    MR. EVANS:  Not to the jury.  I was just wondering, we

25    probably need to call Juror 51 and tell him don't come in until we call

1    him.  Also, not to discuss it with anyone.

2                    THE COURT:  We will do that.

3                    MR. HORMEL:  Not discharge him.  He becomes the

4    alternate.

5                    THE COURT:  I believe that is what would happen at this

6    point.

7                    Mr. Romo, any objection?

8                    MR. ROMO VEJAR:  No, absolutely not.

9                    THE COURT:  I don't know how ill he is.  Do you want us

10   to call him and put him on the phone or just tell him that?

11                   MR. HORMEL:  I'm fine with the court taking care of

12   that.

13                   MR. ROMO VEJAR:  Me too.

14                   MR. EVANS:  Me to.

15                   THE COURT:  Anything further, counsel?  Any further

16   instructions to the jury at this point?

17                   MR. EVANS:  No, Your Honor.

18                   MR. HORMEL:  No.

19                   MR. ROMO VEJAR:  No, Your Honor.

20                   (A recess was taken.)

21                   THE COURT:  Juror Number 51, this is Judge Zapata.

22   And I'm very sorry to hear that you are ill.  What we have done at this

23   point, we have met with the lawyers in the case and the defendants

24   and called the alternate juror.  The alternate juror is coming in to take

25   your spot this morning.

1            But you still will continue -- you now become the

2    alternate juror.  Don't discuss the case with anyone or allow anybody

3    to discuss it with you on the off chance that we need to call you back

4    for some reason.

5            JUROR 51:  Okay.

6            THE COURT:  All right.

7            JUROR 51:  Yes, sir.

8            THE COURT:  I greatly appreciate the fact you let us

9    know right away about your condition and that allowed us to contact

10   the alternate juror.  I hope you feel better.  We will contact you once

11   this matter is over, once either there has been a decision or the juror

12   has been discharged.  Until that time don't discuss the case with

13   anyone or allow anybody to discuss it with you.

14           JUROR 51:  Yes, Your Honor.

15           THE COURT:  I hope you feel well soon.

16           JUROR 51:  Thank you very much.

17           THE COURT:  Thank you.

18           (A recess was taken.)

19           THE COURT:  The record will reflect the presence of

20   counsel and the defendants and the absence of the jury.

21           We received three questions from the jury.

22           Question number 1 states:  Is there a manifest of all

23   items recovered from the trailer?  May we see them?  Signed by the

24   foreperson.  It's a name, but I can't really -- Scott something.  I can't

25   read the last name.

1          THE CLERK:  Emerson.

2          MR. ROMO VEJAR:  It looks like Emerson.

3          THE COURT:  Have counsel seen the questions?

4          MR. HORMEL:  Yes.

5          MS. KELLY:  Yes.

6          THE COURT:  Question number 2:  Why were the

7    firearms not presented or photos of them presented as evidence?

8          Number 3:  To be a hostage, does the victim just have

9    to feel threatened or does a threat have to be overt?

10          I don't believe that there are any real answers that we

11   can give the jury on this one.  My proposal is that we tell them, "Dear

12   members of the jury, in response to questions 1 and 2, all of the

13   evidence has been presented to you in this case.  No further evidence

14   will be presented to you.

15          "In response to question 3, you should refer to the

16   court's instructions and to your collective recollection of the evidence

17   presented in this case.  Remember that you are to follow all of the

18   instructions and not single out some and ignore others.  They are all

19   equally important."

20          Ms. Kelly, do you have any objection to that or do you

21   have any alternative responses that you wish to propose?

22          MS. KELLY:  Can I just have one moment?

23          THE COURT:  Yes.

24          (Off-the-record discussion.)

25          MS. KELLY:  Thank you, Your Honor.  Yes, that sounds

1    good.

2              THE COURT:  Mr. Hormel?

3              MR. HORMEL:  I'm in agreement except for -- the third

4    question was the one relative to the threatening, correct?

5              THE COURT:  Yes.

6              MR. HORMEL:  Relative to that one, Your Honor, I'm

7    concerned that the jury might be left with the impression that the

8    subjective feelings of the material witness, absent any overt acts by

9    the defendants, might be sufficient to sustain a charge which is not

10   the state of the law.

11             The law does require the defendants do something to be

12   guilty of it.  Therefore, I believe there should be some guidance on

13   that issue, Your Honor.

14             THE COURT:  There is guidance, I believe, in the

15   instruction as to that count as to the elements of the offense the

16   government needs to prove.  You know, I'm not -- I don't think there's

17   anymore instructions we can give them beyond that.

18             MR. HORMEL:  Well, my feeling is that they ought to be

19   guided on that.  And the danger being that an element of the offense

20   might be removed if they are not adequately instructed on that

21   particular issue.

22             THE COURT:  Thank you.

23             Mr. Romo?

24             MR. ROMO VEJAR:  Yes, Your Honor.  Judge, I have that

25   concern and another one.

1          If the question were, Your Honor, to be a hostage does

2     the victim just have to feel threatened, would the instruction be the

3     same with regard to how to respond to it?  I would rely on the jury

4     instructions.  Or would we have to let them know that that is really not

5     one of the elements, the subjective feelings of the victim.  Because it

6     seems to me there are two questions there, Judge.

7               THE COURT:  No, there are not.  They are trying -- they

8     are trying to tell us -- us to tell them facts in this case here:  Was he

9     actually threatened or did he just feel threatened?  The instruction

10    very clearly says the second.  The defendants -- the instructions as to

11    Count 2.

12          First, the defendants intentionally seized or detained a

13    person;

14          Second, the defendants threatened to kill, injure or

15    continued to detain that person;

16           Third, the defendants did so with the purpose and

17    intention of compelling a third person to act or refrain from acting in

18    some way as an explicit or implicit condition of the seized or detained

19    person.

20          A person is seized or detained when the person is held

21    or confined against his or her will with physical restraint, fear or

22    deception for an appreciable period of time.

23               MR. ROMO VEJAR:  That is objective.  I think what they

24    are struggling with, even though those things may not be the intent of

25    the perpetrator, that the victim feels that they are threatened, is that

1   sufficient to meet the threshold of the law.  I think that's what they

2   are doing, Judge.  I may be wrong.

3                    THE COURT:  Who knows what they are doing?

4                    MR. ROMO VEJAR:  Purely speculation.

5                    THE COURT:  They are asking us for instructions, more

6   definitions.  At this point we are invading the province of the jury.

7   They have to decide that.  They have heard the evidence.  They have

8   very clear instructions here.

9                    It doesn't get any clearer than:  Second, the defendants

10  threatened to kill, injure or continued to detain that person.  Well, if

11  they find that element, then there's no question there then.  If they

12  are not finding that element, then they are going to have to acquit the

13  defendants.

14                    MR. ROMO VEJAR:  A suggestion, perhaps we refer to

15  that element.

16                    THE COURT:  Well, I referred them to the instructions.

17  And I'm sure they are looking at this because that's the instruction

18  that --

19                    MR. ROMO VEJAR:  Which instruction is that?

20                    THE COURT:  Here's the danger in singling out things

21  and telling them to look at this paragraph or look at that paragraph.

22  We can't do that.

23                    MR. ROMO VEJAR:  Your Honor, what instruction is that?

24  Would it be amenable to tell them Instruction Number 3 which defines

25  the elements?

1    THE COURT:  No.  I'm not going to single out any

2    particular instruction.

3    MR. ROMO VEJAR:  I have one more thing.  That is, the

4    way you read number three that you intended to send to the jury, I

5    wanted to adjust a sentence, if I may, Your Honor.  You stated that

6    they should refer to the jury instructions, I believe, you stated --

7    THE COURT:  To the court's instructions.

8    MR. ROMO VEJAR:  To the court's instructions.  If you

9    could add "and to the facts as you remember them."

10    THE COURT:  I have added that.

11    "You should refer to the court' instructions and to your

12    collective recollection of the evidence presented in this case."

13    MR. ROMO VEJAR:  Collective and individual, isn't it,

14    Judge?

15    THE COURT:  Well, I think that in a case where there is

16    deliberation, it's obviously collective recollection that's going to win

17    out.  I don't think it makes any difference as to collective or individual.

18    The proper instruction I think is "your collective recollection."

19    MR. ROMO VEJAR:  All right, Your Honor.  That's all I

20    have.  Thank you.

21    THE COURT:  Your objections are noted.  That will be the

22    response sent to the jury.  We will see what response we get back

23    from them.

24    Anything further at this time?

25    MS. KELLY:  No.  Thank you, Your Honor.

1                    THE COURT:  Mr. Hormel?

2                    MR. HORMEL:  Not at this time.

3                    THE COURT:  Mr. Romo?

4                    MR. ROMO VEJAR:  No, Your Honor.  I appreciate your

5 waiting for me, Judge.

6                    (A recess was taken.)

7                    THE COURT:  The record will reflect the presence of

8 counsel, the defendant and the absence of the jury.

9                    We have been informed the jury has reached a verdict.

10 We will ask the clerk to bring the jury in.

11                    (The jury was seated.)

12                    THE COURT:  The record will now reflect the presence of

13 the jury, counsel and the defendants.

14                    Juror Number 23, are you the foreperson?

15                    THE FOREPERSON:  Yes, sir.

16                    THE COURT:  Has the jury reached a verdict?

17                    THE FOREPERSON:  We have on several of the counts.

18 Some of the counts we were not able to reach a unanimous decision.

19                    THE COURT:  On those that you were not able to reach a

20 unanimous decision, how did you note that or what did you do with the

21 verdict form?

22                    THE FOREPERSON:  I left it blank.

23                    THE COURT:  Those that are blank the jury was unable

24 to reach a decision?

25                    THE FOREPERSON:  Correct.

1    THE COURT:  Please hand the form to the clerk.  The

2  clerk will read and record the verdicts.

3    THE CLERK:  United States of America versus Yuris

4  Bonilla-Guizar.

5    We, the jury, find the defendant, Yuris Bonilla-Guizar,

6  guilty of conspiracy to commit hostage taking as charged in Count 1 of

7  the superseding indictment.

8    Left blank as to Count 2.

9    Guilty as to Count 3 of knowingly harboring an alien,

10  Julio Cesar Lopez-Trujillo, charged in Count 3 of the supeseding

11  indictment.

12    We, the jury, find the defendant, Yuris Bonilla-Guizar,

13  did commit the crime of harboring an alien, Julio Cesar Lopez-Trujillo,

14  for the purpose of commercial advantage or private financial gain?

15    Yes.

16    Number 2.  We, the jury, find the defendant, Yuris

17  Bonilla-Guizar, during the commission of the offense, did place in

18  jeopardy the life of Julio Cesar Lopez-Trujillo, an alien, and that is left

19  blank.

20    Signed presiding juror's signature, 11-3-2010.

21    United States of America versus Carlos Armando

22  Calixtro-Bustamante.

23    We, the jury, find the defendant, Carlos Armando

24  Calixtro-Bustamante, guilty of conspiracy to commit hostage taking as

25  charged in Count 1 of the superseding indictment.

1    Guilty as charged in Count 2 of intentionally seizing,

2    detaining and threatening to injure and continuing to detain Julio

3    Cesar Lopez-Trujillo, an alien, as charged in Count 2 of the

4    superseding indictment.

5    Guilty of knowingly harboring an alien, Julio Cesar

6    Lopez-Trujillo, as charged in Count 3 of the superseding indictment.

7    Number 1.  We, the jury, find the defendant, Carlos

8    Armando Calixtro-Bustamante, did commit the crime of harboring an

9    alien, Julio Cesar Lopez-Trujillo, for the purpose of commercial

10    advantage or private financial gain.

11    Yes.

12    Number 2.  We, the jury, find the defendant, Carlos

13    Armando Calixtro-Bustamante, during the commission of this offense,

14    did place in jeopardy the life of Julio Cesar Lopez-Trujillo, an alien.

15    Yes.

16    Signed presiding juror's signature, 11-3-2010.

17    THE COURT:  Ladies and gentlemen of the jury, I'm

18    going to ask you a question and each of you will have to either answer

19    yes or no to that question.

20    That question is:  Are these your verdicts and the

21    verdicts of the jury?

22    That is the question.  I'll ask each one of you that and

23    you'll each have to individually answer.

24    We'll start with Juror Number 47.

25    Are these your verdicts and the verdicts of the jury?

1        JUROR 47:  Yes, Your Honor.

2        THE COURT:  Juror Number 10?

3        JUROR 10:  Yes.

4        THE COURT:  Juror Number 11?

5        JUROR 11:  Yes, Your Honor.

6        THE COURT:  Juror Number 59?

7        JUROR 59:  Yes, Your Honor.

8        THE COURT:  Juror Number 33?

9        JUROR 33:  Yes, Your Honor.

10        THE COURT:  Juror Number 17?

11        JUROR 17:  Yes, Your Honor.

12        THE COURT:  Juror Number 19?

13        JUROR 19:  Yes, Your Honor.

14        THE COURT:  Juror Number 20?

15        JUROR 20:  Yes, Your Honor.

16        THE COURT:  Juror Number 22?

17        JUROR 22:  Yes, Your Honor.

18        THE COURT:  Juror Number 23?

19        JUROR 23:  Yes, Your Honor.

20        THE COURT:  Juror Number 37?

21        JUROR 37:  Yes, Your Honor.

22        THE COURT:  Juror Number 49?

23        JUROR 49:  Yes, Your Honor.

24        THE COURT:  Ladies and gentlemen, this completes your

25   work here.  I want to thank you.  It was a fairly long trial.  And we

1    understand -- I understand as do the lawyers understand, one of the

2    hardest things to do in life is to sit in judgment of another person.

3    That is our system.  That's the way our system works.  We want to

4    thank you for your work here.  And at this time you are excused.

5                    (The jury was excused.)

6                    THE COURT:  The record will reflect the jury has

7    withdrawn, counsel and defendants are present.

8                    The jury has returned verdicts as to Mr. Bonilla-Guizar in

9    Counts 1 and 3 and no agreement or verdict as to Count 2.

10                    As to Mr. Calixtro-Bustamante, verdicts as to Counts 1, 2

11    and 3.

12                    For the record, the counts in this verdict form which

13    reflect the counts as stated in the redacted superseding indictment

14    actually refer to the superseding indictment in this case.

15                    Count 1 refers to Count 1 of the superseding indictment.

16    And Count 2 refers to Count 3 of the superseding indictment.  And

17    Count 3 refers to Count 7 of the superseding indictment.

18                    So in the case of Mr. Bonilla-Guizar, there have been

19    verdicts of guilty as to Count 1 of the superseding indictment.  There

20    is no verdict as to Count 2.  And there is a verdict of guilty -- I'm

21    sorry.  No verdict as to Count 2 on our verdict form, but it's Count 3 of

22    the superseding indictment.  On our verdict form is Count 3 which is

23    Count 7 of the superseding indictment, there is a verdict of guilty.

24                    As to Mr. Calixtro-Bustamante, there is a verdict of

25    guilty as to Count 1 of the superseding indictment, verdict of guilty as

1   to Count 3 of the superseding indictment and verdict of guilty as to

2   Count 7 of the superseding indictment.

3           I believe those are the actual counts which I'm sure will

4   lead to confusion at some point.  Those are the counts and those are

5   as they relate to the actual superseding indictment.

6           This matter will be set for sentencing as to each

7   defendant on Wednesday, January 12, 2011, at 9:30 a.m.

8           Each defendant is in custody being held without bail and

9   each defendant will continue in custody being held without bail until

10  the sentencing in this matter.

11          Ms. Kelly, Mr. Evans, any further record that you wish to

12  make at this time?

13          MS. KELLY:  No, Your Honor.  Thank you.

14          THE COURT:  Mr. Hormel, any record you wish to make

15  as to Mr. Yuris Bonilla-Guizar at this time?

16          MR. HORMEL:  Not at this moment, Your Honor.  I'm

17  sure motions will follow.

18          THE COURT:  Thank you.

19          Mr. Romo, is there any record you wish to make as to

20  Mr. Calixtro-Bustamante at this time?

21          MR. ROMO VEJAR:  Not at this point, Your Honor.

22          THE COURT:  Thank you.  Then, counsel, we will stand

23  at recess.

24          Mr. Romo, if you would please wait for just a few

25  minutes.

1            MR. ROMO VEJAR:  Do you need my client?

2            THE COURT:  No.  The jury wants to speak to the

3    lawyers.

4            THE CLERK:  And you.

5            (The proceedings concluded at 4:35 p.m.)

1
2
3
4
5
6
7                         C E R T I F I C A T E
8
9
10
11          I, Dianne Davenport, certify that the foregoing is a correct
12  transcript from the record of proceedings in the above-entitled matter.
13
14
15
16
17  /s/  Dianne Davenport                    November 16, 2011
18
19
20
21
22
23
24
25